No. 34,988

THE STATE OF KANSAS, *Appellee*, v. TED HOWLAND, *Appellant*.

(110 P. 2d 801)

Opinion filed March 8, 1941.

*J. H. Jenson* and *Corwin C. Spencer*, both of Oakley, for the appellant.

*Martin F. Trued*, county attorney, *Jay S. Parker*, attorney general, *A. B. Mitchell*, assistant attorney general, and *Edward E. Pedroja*, special assistant attorney general, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendant was convicted of the crime of statutory rape, and appeals, the only question presented being whether as the result of his preliminary hearing he was properly bound over for trial in the district court.

On December 13, 1939, one Ilene Smith, a person under eighteen years, made her complaint before Harry E. Kean, a justice of the peace of Greeley county, charging Ted Howland with ravishing her. A warrant was duly issued, and on January 22, 1940, a preliminary hearing was held by the justice of the peace. At the conclusion of the hearing, the justice of the peace prepared and filed a transcript, as required by G. S. 1935, 62-630, the only portion with which we are concerned reading as follows:

"Jan. 22. Defendant with Att. Janson appeared for hearing. M. F. Trued Co. Att. appeared and Ilene Smith was sworn and testified. The evidence given shows a crime has been committed and that *the defendant may be has committed said crime or rape*. Said crime being a fellon, said defendant is ordered bound over (to) the district court in the sum of $1,000 for appearance as the court directs." (Italics ours.)

Thereafter on February 1, 1940, an information was filed by the county attorney charging defendant with statutory rape committed on or about June 1, 1939. On June 10, 1940, defendant filed a duly verified plea in abatement alleging, *inter alia*, that no justice of the peace or court or judge had ever found the offense charged had been committed in Greeley county "or that there was or is probable cause to believe the defendant guilty of the offense or offenses charged or attempted to be charged in the information herein."

When the matter came on to be heard, the state declined to answer or demur to the plea, and controversy arose as to rules of practice. After some discussion as to whether the facts alleged in the plea stood admitted, and whether the transcript of the justice of the peace could be considered, the defendant moved for judgment, but not waiving his right to introduce evidence, which motion the court denied. It may be doubted that failure of the state to plead could be held to be an admission of the facts alleged in the plea in

abatement, but certainly the proper practice would have been for the state to file some pleading raising either an issue of fact or of law or of both, so that the defendant could intelligently proceed. In this case, however, the defendant did introduce in evidence the files in the case which included the information, the transcript, complaint and the warrant, without objection from the state, which then called the justice of the peace as a witness. The examination was extended, many of the questions being met with objections which were generally overruled. After testifying that a hearing was held and testimony taken, the justice of the peace testified he came to the conclusion a crime had been committed, and that some one had committed it. From that point on, the examination was conducted principally by the court. It asked the witness whether he had concluded there was probable cause to believe the person on trial guilty and he answered:

"Well, I knew from the evidence that the crime had been committed and I knew from the evidence that he was charged with it, and I had no way of knowing, or anybody else, whether or not positive, but he was charged with it."

The court then advised him it was the duty of the justice of the peace when holding a preliminary to decide whether a crime had been committed, and, if so, whether there was probable ground for believing defendant guilty, and the witness stated he understood that; that he had come to that conclusion and, upon being asked if he meant to convey that by his transcript, answered:

"Yes, sir; that the crime was committed and the defendant was the probably cause of it; I wasn't positive."

The court then advised the witness there was a question about the sufficiency of his transcript showing probable cause to believe defendant guilty, if that was his conclusion, and he was asked if he wished to amend his transcript to make the matter clear. An objection was made and the question was answered thus:

"As I saw the matter at that time, and according to the evidence of the girl, the defendant was guilty of the crime, and since I found the crime had been committed it was above my jurisdiction and had to go to the district court, and I didn't think it was for me to say more than there was a crime committed."

The witness was then further advised as to the provisions of statute concerning his duties and procedure, and then was asked the following:

"The court will ask you now what conclusion you came to at that time with reference to these points: that the crime charged had been committed

and that there were probably grounds for believing the defendant guilty. Did you come to that conclusion or didn't you? A. I came to that conclusion.

"Q. You don't need to give any reason for it. I just want to know what conclusion you came to at that time. A. I came to the conclusion the crime had been committed by the evidence and that the defendant might be guilty; I couldn't be positive; I wasn't on the grounds."

Thereupon the state asked that the justice of the peace be permitted to amend, and defendant moved to strike out all of the testimony as incompetent, etc. The court then stated:

"I will tell you I certainly dislike a situation like this. This justice should have had some help and this record should have been in better shape. *He doesn't go to the extent of saying that he thought that there was probable cause to believe he was guilty, he says he might be guilty, and that's practically the same thing. I don't see there is any basis for amending, how he can amend it to make it any better than it is.*" (Italics ours.)

After some colloquy between counsel, the court stated:

"I will permit the justice to amend his transcript if he wants to and give him until 1:30."

Thereupon the defendant objected to any tampering with the record unless there was something before the court that would authorize the change. The objection was overruled, the court stating:

"He can amend it by attaching an amendment to it that would show upon its face that it was an amendment made at this time in pursuance of the order of the court," etc.

After further discussion by counsel the court stated:

"His testimony goes to this extent: that he couldn't be certain, and he don't have to be certain; he don't seem to understand that, but I am convinced that he thought there was probable grounds to believe the defendant guilty, and on that basis he bound him over. He used inept words to express that meaning. He may or may not amend his transcript, but I will give him an opportunity to do so."

Finally, the county attorney asked the court to direct him to assist the justice of the peace in amending his transcript, defendant objected and the court stated:

"I can obviate that. I believe I will make a ruling to this effect: That on the basis of the testimony of the justice of the peace that his transcript shall stand amended in accordance with his testimony, and on the basis as so amended I will deny the plea in abatement."

Then defendant moved to strike the amended transcript from the files, and offered the justice's docket and, in response to a question as for what purpose, stated that the transcript did not speak the

truth, even as directed by the court. The trial court did not rule on the admissibility of the justice's docket as so offered and defendant then called the justice as his witness and he identified the docket and a certain page of the record dealing with this case, and it was received. A portion of that record was as follows:

"Jan. 22, 1940. Defendant appeared with Att. Janson. Ilene Smith sworn as witness and testified. The evidence shows that a crime of rape was committed. *And that the defendant may be guilty of the crime.*" (Italics ours.)

Further discussion was had between court and counsel and the court then ruled:

"The court is of the opinion and finds from the testimony given by the justice that he heard evidence at the preliminary hearing, and from that evidence he concluded that the crime of statutory rape had been committed and that there was reasonable and probable grounds to believe the defendant was guilty, and for that reason he bound him over, and upon that finding I will deny the plea in abatement."

It is stated in the abstract, and not denied in the briefs, that neither the transcript nor the justice's docket was amended by any person.

Following the ruling on the plea in abatement, defendant was arraigned, pleaded not guilty, a jury was empaneled, the evidence taken, the cause submitted, the jury returning a verdict of guilty. Thereafter defendant filed his motion in arrest of judgment, raising again the question of the sufficiency of the preliminary hearing, and also his motion for a new trial, which stated, among other grounds, defendant had never had a preliminary hearing and that the court erred in overruling the plea in abatement, in directing an amendment of the transcript of the justice of the peace, etc. These motions were overruled and the defendant sentenced, and he appeals, raising only the question first stated.

In discussing the particular question presented by this appeal, it is to be borne in mind that no appeal by the defendant would lie from the ruling on the plea in abatement until after trial and final judgment on the information (see *State v. Brown,* 144 Kan. 573, 61 P. 2d 901, and cases cited), and therefore no weight may properly be laid on the fact the jury returned a verdict of guilty at the trial. This is defendant's first opportunity to present his question to this court. There is no doubt the offense charged in the complaint filed with the justice of the peace was a felony. There was no contention defendant was ever a fugitive from justice, nor that he ever waived a preliminary hearing. In order to expedite discus-

sion, these matters will be assumed and not repeated in what is later said.

For present purposes it may be said our criminal code provides that on a proper complaint being made a justice of the peace shall cause a warrant to issue, to be served upon the person charged with committing the offense, who is brought before the justice of the peace for a preliminary hearing. At that hearing, if it shall appear to the justice of the peace no offense has been committed "or that there is not probable cause for charging the prisoner with the offense" he shall be discharged (G. S. 1935, 62-618), but "If it shall appear that an offense has been committed, and that there is probable cause to believe the prisoner guilty . . . the prisoner shall be committed for trial" (G. S. 1935, 62-620), and this with all statutory details shall be certified forthwith by the justice of the peace to the clerk of the district court, and if he fail, he may be proceeded against as for contempt. (G. S. 1935, 62-630.) The offense is prosecuted in the district court on an information filed by the prosecuting attorney of the proper county as informant, but it is provided that no information shall be filed against any person for a felony until he has had or waived a preliminary hearing (G. S. 1935, 62-805). The record before us discloses this method of procedure was generally followed, unless by reason of the failure of the justice of the peace to find and certify there was probable cause to believe the prisoner guilty of the offense charged.

In the many criminal appeals that have been before this court, it does not appear the precise question now under discussion was ever presented or considered. It has been said on many occasions that a general finding made by the examining magistrate that an offense has been committed and that there is probable cause to believe the defendant is guilty of its commission is a sufficient compliance with the criminal code. (See, e.g., State v. Tennison, 39 Kan. 726, 18 Pac. 948; State v. Wellman, 114 Kan. 671, 220 Pac. 271.) And in many cases, such as State v. Bailey, 32 Kan. 83, 3 Pac. 769, and McIntyre v. Sands, 128 Kan. 521, 278 Pac. 761, it has been held the main purpose of a preliminary examination is to determine that a crime has been committed and to give the defendant general information of its nature and inform him of the nature of the evidence he will be required to meet when on trial in the district court, but those cases do not treat of any failure of the examining magistrate to find probable cause to commit the prisoner for trial. And

it has been held that if the transcript certified to the district court be attacked on the ground of insufficiency as not showing certain matters, by leave of court the justice of the peace may amend so as to make it speak the truth by making additional entries not inconsistent with the record as previously made and certified. (See *State v. Geary,* 58 Kan. 502, 49 Pac. 596; *State v. Handrub,* 113 Kan. 12, 213 Pac. 827, and *State v. Parise,* 117 Kan. 106, 230 Pac. 304.) Under the statutes pertaining to preliminary examination as quoted above, it is a condition precedent to committing a prisoner for trial by the district court, that from the whole examination it appear a crime has been committed and that there is probable cause to believe the person charged is guilty.

In *State v. Goetz,* 65 Kan. 125, 69 Pac. 187, the complaint filed charged assault with a deadly weapon with intent to kill. Upon the preliminary examination, the justice announced he did not find probable cause for charging defendants with the offense. We shall not notice fully all that was done, but the county attorney nevertheless filed an information in the district court. A plea in abatement was filed and overruled and on trial defendant was convicted. The conviction was reversed in this court. In discussing the purpose of a preliminary examination and the sufficiency of the plea in abatement, it was said:

"While one object of a preliminary examination is to inform the defendant of the nature and character of the crime charged against him, it is also a step and a necessary step in the proceeding that leads up to his trial in the district court. *He may not be put upon his trial without the finding of the examining magistrate that there is probable cause for believing that he is guilty of the crime charged, and until a preliminary examination has ripened into such a finding and a consequent binding over to the district court, the county attorney is not authorized to file an information against him.* 'The party accused has a right to a preliminary examination and a finding of probable cause, before he can be placed upon his final trial.' (*The State v. Montgomery,* 8 Kan. 355.) The defendants' plea in abatement ought to have been sustained, and the defendants not put upon trial as they were." (p. 127.) (Italics ours.)

and it was held:

"A preliminary examination, under the provisions of article 5 of the criminal code (Gen. Stat. 1901, §§ 5475-5505), which does not result in a finding by the examining magistrate that there is probable cause to believe the prisoner guilty of the offense charged, will not authorize the county attorney to file an information against such accused, or the court in proceeding to trial upon an information so filed, when the same is attacked by a plea in abatement." (Syl. ¶ 1.)

In *State v. Pigg,* 80 Kan. 481, 103 Pac. 121, the warrant charged grand larceny. Defendant offered to waive a preliminary hearing, but one was held and the magistrate found there was probable cause to believe defendant guilty. The information filed charged larceny from the person. A plea in abatement was filed alleging defendant had never had a preliminary examination for the offense charged in the information. We need not pursue that phase of the matter, but in discussing purpose and sufficiency of such an examination, this court, after quoting a portion of the opinion in the Goetz case as above set forth, said:

"Indeed, the purpose of a preliminary examination may be said to be threefold: (1) To inquire concerning the commission of crime and the connection of the accused with it, in order that he may be informed of the nature and character of the crime charged against him, and, *if there be probable cause for believing him guilty, that the state may take the necessary steps to bring him to trial;* (2) to perpetuate testimony; (3) to determine the amount of bail which will probably secure the attendance of the accused to answer the charge." (p. 484.) (Italics ours.)

And the law of the case as set forth in the first syllabus was in accord.

Before reviewing what transpired at the preliminary hearing, as evidenced by the justice's transcript, and at the hearing on the plea in abatement in the district court as evidenced by the documentary evidence and the testimony of the justice, we pause to notice what is included in the expression "probable cause." That expression is used in connection with many branches of the law such as arrest, attachment, the criminal law, false imprisonment, libel and slander, malicious prosecution, negligence, etc. It has been said to be a term difficult to define, but signifying about the same in law as in common parlance (50 C. J. 420), and in Bouvier's Law Dictionary, 3 Rawle's 3d rev., p. 2728, it is thus defined:

"A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged."

In Webster's International Dictionary, 2d ed., the term "probable cause" and the word "probable" are thus defined:

"Probable cause. *Law.* A reasonable ground of presumption that a charge is well founded. Two definitions of probable cause with reference to the criminal prosecutions and actions in tort are in general acceptance. One is that 'probable cause is the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge

of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.' The other, and more widely accepted definition, tantamount to this, is: 'Probable cause means a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.' (Fed. Cas. 9926.) Probable cause in civil suits is in principle the same."

"Probable. 1. Having more evidence for than against; supported by evidence strong enough to establish presumption, but not proof, of its truth; as, to make out a *probable* case; the hypothesis is *probable;* a highly *probable* conclusion.

"3. Likely to be or become true or real; such as logically or actually may be or may happen; reasonably, but not certainly, to be believed or expected; as, *probable* events or developments; the *probable* author of a book; a *probable* plot or character."

In amendment 4 to the United States constitution, dealing with unreasonable searches and seizures, it is provided that no warrant shall issue "but upon probable cause." In *Ex Parte Heacock*, 8 Cal. App. 420, 97 Pac. 77, it was held this meant there was a probability a crime had been committed by the person named in the warrant. As shown in the transcript, the justice, in defining defendant's relation to the offense found to have been committed, did not find probable cause to believe the prisoner guilty. He used the following language: "defendant may be has committed said crime." It must be said that although the justice used two words, "may" and "be," he used them in an adverbial sense and intended use of the single word "maybe." In the justice's docket, the same finding appears thus: "And that the defendant may be guilty of the crime."

In the dictionary above mentioned, under the heading "may" that word is defined as an auxiliary verb, indicating liberty, opportunity, permission or possibility, and also:

"*May be,* and *it may be,* are used as equivalent to possibly, perhaps, by chance. See 1st *maybe."*

Reference to the citation shows:

"Maybe . . . adv. [For *it may be.*] Perhaps; adj. Possible, probable, but not sure, *rare."*

Tested under rules of common grammatical construction, and applying to the words used their ordinary definition, it appears that the justice of the peace in preparing his transcript, as well as his docket from which the transcript was prepared, did not use language which may be interpreted or construed to be a finding there was probable

cause to believe the defendant guilty of the offense charged. The most he found was possibility, not probability, of guilt.

With the record in this condition, the state offered the justice as a witness. Under the decisions as above noted, that was permissible, for if the evidence adduced showed that the transcript certified to the district court did not speak the truth, then it was permissible for the justice to amend the transcript to make it do so. On the other hand, his testimony was not competent to make the record show something that was not done at the preliminary hearing, nor to permit him to state he now had reached a conclusion he did not reach at the hearing. He could no more say he now believed there was probable cause to believe the defendant guilty, if he had previously made a contrary finding, than he could say "I made a finding there was probable cause, but now I believe there was not." He may not impeach his record.

And so we examine the testimony of the justice of the peace to determine whether it discloses that at the preliminary examination the justice found there was probable cause to believe defendant guilty of the offense charged. It may be observed that many of the questions asked were of a leading nature. In the early part of the examination upon being asked whether he had concluded there was probable ground to believe defendant guilty, he answered he knew that a crime was committed, but he had no way of knowing, "but he was charged with it." Later the same question was put in a different way and he then stated he had come to that conclusion, but on being asked if that was what he meant to convey in his transcript, he qualified his answer. Upon being asked whether he wished to amend his transcript, he made an answer which, taken alone, shows that at the preliminary he did not make any conclusion as to probable cause. The examination continued, and in response to another leading question he stated he came to a conclusion which he immediately qualified by ". . . the defendant might be guilty; I couldn't be positive," etc. Thereafter the trial court stated the witness didn't say there was probable cause—"he says he might be guilty, and that's practically the same thing." Thereafter, as shown fully earlier herein, the court gave him permission to amend his transcript, but after objection and argument, ruled that on the basis of the testimony, the transcript should stand amended, and at a later stage, found from the testimony the justice had concluded the crime

had been committed and that there was reasonable and probable grounds to believe defendant guilty.

Bearing in mind the rule that the trier of the fact is not compelled to believe all of the testimony of a witness, and the further rule that on appeal the facts as found below are conclusive, the majority of this court believe the above finding is not supported by competent evidence.

It may be noted that only by taking parts of answers and by ignoring the qualifications put thereon by the witness may it be said the justice of the peace made any conclusion, at the time the preliminary was had and when he made his docket and the transcript therefrom, that there was probable cause to believe defendant guilty. The justice testified he thought his duty was only to find a crime had been committed. After being advised as to the statute prescribing his duties, he was again asked as to any conclusion he reached, and he again qualified his answer. The most he ever concluded was that defendant "might be guilty." And that the trial court, at the conclusion of the justice's testimony, thought the testimony did not prove he had arrived at any conclusion of probable cause, is evident from its statement:

"He doesn't go to the extent of saying that he thought that there was probable cause . . . he says he might be guilty, and that's practically the same thing. I don't see there is any basis for amending, how he can amend it to make it any better than it is."

We concede the right of the court to change its mind. But it is to be remembered there was no further testimony. When the court later said the justice had concluded at the preliminary there was "reasonable and probable cause" it made a finding not supported by the evidence. For reasons hereinbefore noted, we think the statement of the court that "might be guilty" and "probable cause to believe he was guilty" are practically the same thing, is incorrect. The state attempts to justify the ruling of the trial court by the assertion that the language used by the justice means the same thing as the statutory requirement, and that defendant must show to the trial court that some of his substantial rights have been prejudiced before he can be heard upon his plea. A simple answer to that is the statutes under which he was prosecuted provide a certain machinery which must be followed before he can be put upon his trial in the district court. It has always been the rule that the defendant is entitled to a strict construction of the criminal law (*State v. Chapman*,

33 Kan. 134, 5 Pac. 768; *State v. Millhaubt,* 144 Kan. 574, 587, 61 P. 2d 1356), and that it is the duty of the courts to enforce a rigid and vigilant observance of those laws designed to preserve inviolate the right of trial by jury and the purity of such trials (*State v. Snyder,* 20 Kan. 306; *State v. Netherton,* 128 Kan. 564, 570, 279 Pac. 19). One thing recognized by every decision which has dealt with the question is that where the defendant is not a fugitive from justice, or has not waived it, he can only be committed for trial where, as a result of a preliminary examination, it has been found that a crime has been committed and there is probable cause to believe he is guilty. That is a fundamental and basic right, it is substantial, and certainly if he is deprived of it, he is prejudiced. The enforcement of the criminal laws is important, but in their enforcement it is always to be remembered that it is just as important that the state follow the statutory provision for his prosecution as that he follow the law for the violation of which he is being prosecuted.

The state directs our attention to certain cases and says that under them the transcript filed was sufficient to confer jurisdiction on the district court. They will be noticed very briefly as bearing on the question now before us. In *State v. Tennison,* 39 Kan. 726, 731, 18 Pac. 948, and *State v. Demming,* 79 Kan. 526, 528, 100 Pac. 285, the transcript filed showed probable cause to believe defendant guilty. In *State v. Bland,* 120 Kan. 754, 244 Pac. 860, the transcript showed the defendant had waived a preliminary examination. In *Foley v. Ham,* 102 Kan. 66, 169 Pac. 183, the issue was in substance an application for a writ of prohibition to prevent repeated prosecutions, and the question raised was to determine the power of the district court to rule thereon. None of those cases say that an information may be filed against any person until after he shall have had or waived a proper preliminary examination or be a fugitive from justice as provided in G. S. 1935, 62-805.

It may be suggested that our approach to the question involved is legalistic, and under the true intent and purpose of the crimes act and the criminal code, the state's contention should be treated with liberality. Such a suggestion is not new. In *State v. Fleeman,* 102 Kan. 670, 677, 171 Pac. 618, attention was directed to what is now G. S. 1935, 62-1718, that on an appeal in a criminal case, the court must give judgment without regard to technical errors which do not affect the substantial rights of the parties, and after finding such rights had not been invaded, said:

"The code of criminal procedure was framed to supersede the common law with a more rational system. While it is defective in many respects, and in many others exhibits a conservatism which contrasts strongly with its general liberality, it is distinctively modern. The tradition of the common law, however, was so strong that it came near superseding the code. In time the code was rediscovered, and it is the purpose of the court to interpret and apply it according to its true intent and spirit." (p. 677.)

But with due regard to the suggestion, it may not be followed here. The right to a preliminary hearing, and all that is required by statute in respect thereto before a person accused may be informed against in the district court, is a substantial right, which, under any guise, ought not to be frittered away. In a civil case, *Atchison Street Rly. Co. v. Mo. Pac. Rly. Co.*, 31 Kan. 660, 3 Pac. 284, this court, speaking through Mr. Justice Brewer, said:

"The bill of rights is something more than a mere collection of glittering generalities;" etc. (Syl. ¶ 1.)

Paraphrasing that thought, it may here bé said that the provisions of the criminal code providing for a preliminary hearing "are something more than a mere collection of glittering generalities." If the state's case is so weak it cannot make a showing at the preliminary sufficient to convince the examining magistrate there is probable cause to believe the accused guilty, certainly he should not be committed for trial; on the other hand, if the state has a strong case, it casts no undue burden on it that it make a sufficient disclosure to convince the magistrate there is probable cause. Defendant should be bound over for trial properly or he should not be tried. To take away from him the benefits and protection which the criminal code grants him is to deprive him of his rights and privileges guaranteed to him under our system of government and should not be tolerated.

We conclude that the trial court erred in not sustaining appellant's plea in abatement, what followed at the trial is a nullity, and that the judgment of the trial court should be reversed. It is so ordered.

Hoch, J. (concurring): I desire to add a brief comment on this case. It is true that the trial court, after rather extended examination of the justice of the peace to determine whether the latter had intended to find that there was "probable cause" for believing that the accused had committed the crime, announced that the record of the justice of the peace would be treated as corrected to conform with the requirements of the statute. However, the record dis-

closes that after the examination of the justice of the peace had been completed and all of the evidence on the matter was in, the trial court stated, referring to the justice of the peace:

"He doesn't go to the extent of saying that he thought that there was probable cause to believe he was guilty, he says he might be guilty, and that's practically the same thing."

On this record, an affirmance of the judgment would necessarily, it seems to me, constitute an approval of the proposition that a finding by an examining magistrate that "maybe" the accused is guilty or "might be" guilty of the crime charged is tantamount to the finding required by the statute that there is "probable cause" to believe him guilty. The difference between the two findings is so substantial that a disregard of the difference cannot be safely classed with the mere technical errors that are to be overlooked upon review by this court.

Whether the accused may yet be tried on a new and valid information is not a question presented here, nor have counsel here contended that the question could be answered from the record before us.

DAWSON, C. J. (dissenting): The legal principles stated in the syllabus are sound, and the citations of authority quoted and cited in the opinion amply sustain them. But I cannot agree that the inexact language of the justice of the peace (a village blacksmith in civil life?) is sufficient basis for letting this defendant go unwhipped of justice after a jury has found him guilty. In my opinion such a result is forbidden by the criminal code whose mandate to this court is that we "must give judgment without regard to technical errors or defects . . . which do not affect the substantial rights of the parties." (G. S. 1935, 62-1718, and annotations.)

HARVEY, J. (dissenting): I concur in all that is said in the dissenting opinion of the chief justice, hence other points only are mentioned here. The opinion, erroneous in its result as I believe it to be, may settle the proper procedure on the hearing of a plea in abatement. Certainly the state should join issues of law or fact on such a plea by a demurrer, answer, or other appropriate pleading, and the issues thus joined should be heard and determined. The contentious refusal of counsel for the state to assist in framing such issues and to proceed orderly to have them determined resulted in

the lengthy colloquy among counsel and the court which confuses the record. Certainly a finding that one "may be guilty" of a crime is not tantamount to a finding that there "is probable cause" to believe him guilty.

The records of justice of the peace courts, in common with the records of all courts, may be amended to speak the truth. The state called the justice of the peace as a witness. His testimony convinced the trial court that the judgment of the justice of the peace, at the preliminary hearing, was that felony had been committed and that there was probable cause to believe the defendant committed the crime. There is an abundance of evidence in his testimony to justify the court's final construction to the testimony. He said, "according to the evidence of the girl, the defendant was guilty of the crime." He found a crime had been committed and he thought it was not for him to say any more—it was above his jurisdiction and would have to go to the district court. Clearly he was not conscious of, or clearly distinguishing, the different meanings proper to apply to the term "may be guilty," or "that there is probable cause for believing defendant to be guilty." It is true that at one time during the long colloquy the court stated an analysis of the testimony of the witness which left the court in doubt. But later and after further argument and consideration the court found from the testimony of the witness that he had found not only that a felony had been committed, but that there was probable cause to believe the defendant to be guilty. That was the ultimate finding of the court. This justified an order of the court correcting, or treating as corrected, the record of the justice of the peace. The matter heard by the court was one proper for it to hear. It was for the trial court to determine what the evidence proved. We are concerned with the ultimate finding of the court on that question only to see that there was ample, competent testimony to sustain the finding ultimately made. Our decision should not be made upon an analysis of the testimony made by the court at some time during the long colloquy between court and counsel. We should base our decision on the final conclusion of the court reached after the conclusion of all the testimony of the witness, the argument of counsel and the consideration of the matter by the court. If that were done the judgment of the trial court would be affirmed.