No. 36,572

THE STATE OF KANSAS, *Appellee*, v. HARRY SEWARD, JR., *Appellant*.

(181 P. 2d 478)

JAMES P. COLEMAN, judge. Opinion filed June 7, 1947.

*Elisha Scott,* of Topeka, argued the cause, and was on the briefs for the appellant.

*H. W. Harper,* of Junction City, argued the cause, and *Robert A. Schermer-horn,* county attorney, *Lee Hornbaker,* of Junction City, and *Edward F. Arn,* attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a criminal prosecution. The information was in three counts. The first charged defendant with stealing a check drawn upon The Central National Bank of Junction City, Kan., against the account of the Martin K. Eby Construction Company and payable to Ira L. Wheeler in the sum of $75.68; in the second count he was charged with forgery in that he endorsed the name of Ira Wheeler, the payee, on the back of the check; and in the third count he was charged with obtaining property under false pretenses by means of the check. The defendant was convicted on the second and third counts. He has appealed.

At the trial the defendant moved to quash the information because it was "duplicitous" on the ground that the three counts concerned only one check. The first count was dismissed at that time. The trial proceeded as to the second and third counts. At the end of the trial the defendant filed a motion for a new trial on ten grounds. This motion was overruled. The application of the defendant for parole was denied and the defendant duly sentenced to the Kansas State Industrial Reformatory.

The defendant argues his motion to quash should have been sustained because the information in the first count charged the defendant with stealing the check; and in the third count with using the same check for obtaining money under false pretenses. The trouble about that argument, in the first place, is that just as the trial was about to start the state dismissed the information as to the first count, leaving counts 2 and 3, upon which the defendant was tried. Furthermore, duplicity in an information is generally defined as the joinder of separate and distinct offenses in one and the same count. That is not the case here. Forging the name of the payee on the back of the check was one distinct offense in violation of a particular statute. The commission of that offense could be proved by competent evidence bearing on that question. Obtaining property under false pretenses by means of the check was a separate and distinct offense, a violation of a different statute, and must be established by evidence which might not of necessity be competent as to the offense charged in the other count. Under

such circumstances such offenses may be charged in the same information but in different counts. (See 42 C. J. S. 1112; 27 Am. Jur. 683; *State v. Emory,* 116 Kan. 381, 226 Pac. 754; *State v. Harris,* 103 Kan. 347, 175 Pac. 153.)

Defendant next argues that the trial court erred in refusing to permit his counsel to cross-examine a handwriting expert before the expert testified as to a comparison between some admitted writing of the defendant and the writing that appeared on the back of the check, and that the court erred in connection with the testimony of this expert in permitting the witness to use some enlarged photographs of handwriting for the purpose of demonstrating his evidence to the jury and to testify otherwise than by means of questions and answers. We have examined the testimony of the expert in the record and, outside of a matter we shall notice presently having to do with the manner in which specimens of handwriting for purposes of comparison were obtained, can find no error in connection with it.

In *State v. Ryno,* 68 Kan. 348, 74 Pac. 1114, we approved the use of a blackboard by a handwriting expert to make his testimony more clearly understood by the jury. (See, also, *Ort v. Fowler,* 31 Kan. 478, 2 Pac. 580.)

The above are the main points argued by counsel for the defendant and were they the only points in the case we would have no difficulty in affirming the judgment.

On his motion for a new trial, however, the fifth ground thereof was that the court admitted illegal testimony into the record over the objection of the defendant, and the seventh ground was that the court committed an error by refusing to permit the attorney for the defendant to examine the chief of police and the sheriff before an alleged statement or confession of the defendant was read to the jury.

The defendant calls our attention in his brief to the fact that he was only seventeen years old at the time of his trial; that he was locked in jail and held until late that night without being permitted to talk with his parents or a lawyer but was confronted with the chief of police and others; that they claimed he made a written confession, which he claimed was not a confession and was not made freely and voluntarily and without promise or threats or coercion, and that he was caused to sign his name on blank pieces of paper without being advised that these specimens of writing would

be used against him when the handwriting expert was asked to testify as to the defendant's admitted handwriting and the handwriting on the back of the check.

No extended argument is made on these points in the brief of appellant; neither is the abstract furnished us by the appellant and the state adequate to enable us to pass upon them. Defendant was, however, only seventeen years old at the time the events referred to transpired, and we have out of an abundance of caution sent for and examined the transcript of the proceedings.

The state proved that defendant brought the check in question into a jewelry store; that he said he was the person who was named payee; that he signed the name of the payee on the back thereof and received some merchandise and some cash in exchange therefor. The state also introduced testimony to prove that defendant was not the payee, and that the signature written on the back of the check by defendant was not his own. The merchant at whose store the check was cashed testified that he saw the defendant at the police station shortly after he was arrested; that the defendant asked that he·be turned loose so that he could earn money and pay for the check. The merchant then testified that while he was there defendant signed his name to a statement admitting that he had written the endorsement on the check. Counsel for the state then offered this statement in evidence. At this time counsel for the defendant objected to the offer on the ground that before the confession was admitted he desired to interrogate the witness who was being asked to identify it.

Counsel for defendant insisted that he did not have to prove that the confession was made as the result of coercion; he argued that the state had the burden of proving that it was not the result of coercion or threats. On the request of counsel for defendant, the trial court excused the jury. Thereupon there was an extended argument and colloquy between counsel for both sides and the court as to the admissibility of this writing. Counsel for defendant insisted that the paper showed on its face that it was not in the words of defendant; that defendant had just told him that he had signed several pieces of paper in the office of the chief of police but none had any writing on them. Counsel for defendant argued to the trial court that before a confession may be admissible it must be in the words of the accused; the accused must have been advised of his constitutional rights and the burden was on the state to show

that it was freely and voluntarily made without coercion, threats or promises.

The county attorney then made a statement as follows:

"If it please the court, I can well understand counsel's objection to the introduction of a statement signed by the defendant, of this nature, and he has the full right to show any mitigating circumstances, he has the right to show that that statement is the result of browbeating, the water method, or anything else, and he can do·anything within the limits of the law to prove that this statement is not the thought or the word or the deed of this defendant, but he has to make that proof."

Counsel for defendant then said:

"I don't have to prove it, and I say the burden of proof is on you and not on me to show that it was freely and voluntarily done."

With the record about as above, the trial court indicated it would overrule the objection and admit the writing. Whereupon counsel for the defendant offered to show by witnesses that the offered writing was not a declaration against interest or the confession of the accused. The trial court advised counsel that his offer would be accepted when defendant was putting on his case.. The jury was thereupon called in and the witness was permitted to identify the paper.

The trial court overruled the objection and admitted the confession. This writing was as follows:

"Junction City, Kansas
"July 9, 1945

"On May 29, 1945, I, Harry Seward, Jr., age 17, 1417 North Jackson St. this city, did take, steal and carry away from the office of Martin K. Eby Construction Co. C. R. T. C. one check, number 9599, amount $75.68, made payable to Ira L. Wheeler, and endorsed and cashed same at Clint's Jewelry Store, 903 North Washington St. Junction City, Kansas, the same day.

"I make this statement of my own free will without threat or promise.

"Harry Seward

"Witnesses
"B. M. Wolf
"Clinton R. Swan"

The witness was permitted to testify that he did not see this statement prepared; that it was signed in his presence while he was there and he signed it as a witness, while on cross-examination he was permitted to testify that he saw the defendant have the statement in his hand but he did not read it aloud.

The chief of police was permitted to testify that he arrested defendant and took him first to the jewelry store so that the clerk

with whom he had done business could identify him; that the defendant admitted taking the check and wanted to make a settlement with Mr. Swan, the merchant; that witness had his secretary write the statement which has already been referred to; that he took it and showed it to defendant, and the witness was asked whether any threats were made by him against defendant before the defendant signed the confession. Objection of defendant to this question was sustained. Finally after some colloquy the witness was permitted to testify that the defendant wanted to get out of it and go to work for Mr. Swan but that he told the defendant that since Mr. Swan had signed a complaint it would "have to be gone through with."

The sheriff testified that while defendant was in the office of the chief of police he caused him to write his name a number of times upon slips of paper. These slips were identified as State's Exhibit "E" through the letter "K." They were offered and over the objection of defendant that the proper foundation had not been laid, and they would not tend to prove any issue in the case, they were received. The sheriff further testified that he caused the defendant to make these specimens of handwriting at the direction of the county attorney. On cross-examination by the defendant he stated he could not remember whether he told the defendant these specimens would be used against him. The handwriting expert later used these specimens in his testimony as a means of comparing the handwriting of the defendant with that which appeared on the check when he testified that the endorsement on the back of the check was in the handwriting of defendant.

The defendant's mother testified that she did not know her son was in jail until she came home from work; that she was denied permission to see him at first but after calling upon the county attorney she was given permission to see him in jail late that night after he had signed the purported confession.

The defendant denied that he signed any confession but he did say he wrote his name on several pieces of paper. He said, on the witness stand, that it was his name on the confession but when he wrote it there he did not sign any paper that had any writing on it.

The court gave no instruction whatever to the circumstances or the manner in which the jury was to consider the purported confession. The county attorney argued to the jury that the defend-

ant had signed a confession in the presence of the chief of police and Mr. Swan. There is no question but that defendant was in his seventeenth year at the time of his arrest.

The peculiar circumstances surrounding the making of the so-called confession were called to the attention of the trial court at the time it was first offered. Here we have a seventeen-year-old boy taken to police headquarters and without his being advised of his constitutional rights—that he did not have to talk and that whatever he said would be used against him—and without the advice of counsel and without being advised that he had a right to counsel he was caused to sign a writing which, if it is to be believed, was a virtual plea of guilty.

Counsel for the state argued that the trial court ruled on the objection to the introduction of the confession as though the defendant had the burden of proving that the confession was not freely and voluntarily made without threats or coercion. That is not the correct rule, however. The burden was on the state to prove that it was freely and voluntarily made without threats or coercion.

In *Vernon v. State*, 239 Ala. 593, 196 So. 96, the court said:

"Extrajudicial confessions of guilt by an accused on trial for crime are prima facie involuntary, and the burden rests upon the state to overcome this prima facie infirmity by evidence satisfactory to the court trying the case that the confession was voluntarily made, before such confession can be received in evidence." (p. 599.)

As to the admissibility of evidence as to a confession the court said in *Johnson v. State* (1941), 242 Ala. 278, 5 So. 2d 632, 635:

"Prima facie, confessions are involuntary, and there must be evidence addressed to the trial judge rebutting that presumption, and showing prima facie that the confession was voluntarily made, unless of course the circumstances attending the confession discloses their voluntary character." (p. 281.)

In *The People v. Ickes* (1939), 370 Ill. 486, 19 N. E. 2d 373, it is said:

"For a confession to be received in evidence the burden is upon the people to show that it is voluntary." (p. 490.)

In Louisiana as pointed out by the court in *State v. Henry* (1940), 196 La. 217, 198 So. 910, in determining whether the confession was voluntary, the Louisiana code requires that before what purports to be a confession can be introduced in evidence it must be affirmatively shown that it was free and voluntary.

In *Lubinski v. State,* 180 Md. 1, 22 A. 2d 455, the supreme court of Maryland found the state had sustained the burden of proof as to the confession being voluntary and that the trial court had not erred in the admission. The law as to the burden of proof is stated thus:

" 'Where the confession of the commission of a crime is sought to be offered in evidence, the burden is upon the state to show that the confession so offered was the voluntary act of the accused.' " (p. 7.)

And headnote three of *Demby v. State* (1946, Md.) 48 A. 2d 586, reads:

"The burden of proof is upon the state to show that any confession is freely and voluntarily made, and is not obtained by threats or inducements."

To the same effectt is headnote one of *Taylor v. State* (1946, Md.) 49 A. 2d 787, which reads:

"The burden is upon state of proving that a confession is fairly and voluntarily made, and not obtained by force, threats, or inducement."

Syllabus, paragraph thirteen, of *State v. Thomas,* 250 Mo. 189, 157 S. W. 330, states the law thus:

"The burden is upon the state, in a preliminary examination before the court, to prove that a confession, made and signed by defendant after his arrest, was secured without the use of threats or violence or the promises of reward or leniency and those words include such prolonged questions or importunities as render the confession involuntary."

And on page 210 of the opinion we find the following reasons for the above rule of law:

"As to whether a confession is presumed to be voluntary when signed and sworn to by defendant is a matter upon which the authorities are not in harmony. .2 Wharton's Criminal Evidence (10 Ed.), sec. 622 k; 12 Cyc. 480; *State v. Jones,* 171 Mo. 401; *State v. Armstrong,* 203 Mo. 554; but as a party while under arrest is not bound to make any statement regarding his guilt or innocence, even though he be directly accused (*State v. Foley,* 144 Mo. 600), and as it is a well-known fact that most persons would rather be free and out of jail than under arrest and confined, we think it is only a matter of common sense to assume that a man under arrest would not voluntarily admit his guilt and thereby insure the prolongation of his incarceration without he is encouraged. to do so by hope of securing leniency, or to secure relief from physical or mental torture. For these reasons we hold that when it appears that a confession was made and signed by a defendant after his arrest, the burden is upon the state in the preliminary examination before the court to prove that such confession was secured without the use of threats or violence or the promise of reward or leniency."

This case involved the prosecution of a seventeen-year-old Negro boy for murder in the first degree.

A confession is inadmissible unless accused was advised of his rights under the law and it is shown the confession was made voluntarily. Mr. Chief Justice Whitfield speaking for the court in *Daniels, et al., v. State,* 57 Fla. 1, 48 So. 747, said:

"Where a person is on trial for a crime, evidence of a confession of guilt of the crime previously made by such person is in general not admissible unless it appears that the confession was entirely voluntary. If such confession is made while the party is under arrest or charged with the crime, evidence of the confession is not admissible on the trial unless it is made to clearly appear that the party was fully advised of his rights and that after being so advised the confession of guilt was freely and voluntarily made under circumstances that afforded no undue influence in procuring the confession." (p. 4.)

On the other hand, it is said the effect of absence of counsel does not render a confession inadmissible (2 Wharton's Criminal Evidence, 11th ed., p. 1051, § 628; 20 Am. Jur. 434, § 503), but the fact accused was without counsel when he made a confession is material as showing it was involuntary (20 Am. Jur. 435, § 503).

In *State v. Oberst,* 127 Kan. 412, 273 Pac. 490, the defendant had been permitted to plead guilty to murder without the advice of counsel. Later, on advice of counsel, he asked permission to withdraw his plea and enter a plea of not guilty. This motion was denied. This court in an opinion containing an extended review of the authorities reversed the trial court. In the opinion we emphasized the fact that the defendant was a seventeen-year-old boy. It is true that in that case the defendant had pleaded guilty without the advice of counsel, while in this case the question with which we are concerned is the admissibility of a purported confession. The confession here, though, was a virtual plea of guilty. We regard the Oberst case as being highly persuasive on the point we are considering.

The question of whether the confession had been freely and voluntarily made without force or coercion being used, and without promises, should have been in the first instance considered by the trial court in the absence of the jury and before it was offered to the jury. Then if the trial court had been convinced that it was admissible it could have been given the jury under proper instructions.

Even had the court in this case on conflicting evidence admitted the confession, the jury should have been instructed that it should, along with the other evidence, consider it on the question of the guilt or innocence of the defendant. (See *Bruner v. People,* 113

Colo. 194, 156 P. 2d 111.)  In *State v. Curtis*, 93 Kan. 743, 145 Pac. 858, we said:

"If the jury were bound to believe the evidence of the confession in its entirety, or reject it altogether, the instruction would be easily sustained, but they were not. It is elementary that jurors are exclusive judges of facts, whether established by evidence of a confession or otherwise. It might be said that there is no good reason for accepting a part of the confession as true and rejecting another part, but that was for the jury to determine. It frequently happens that the statement of a witness, although relating only to a single matter, is believed in part and disbelieved in part, for reasons inherent in the narration or appearing in collateral circumstances, some of the testimony being given ready credence, and some as readily rejected. It is the right of the jury to believe or disbelieve a witness in whole or in part. Not only is the weight of the testimony of any witness for the jury, as they are usually told in the instructions, but the weight of every part is equally for their determination." (p. 750.)

In *State v. Hayes*, 106 Kan. 253, 187 Pac. 675, we held a written confession admissible. The opinion is interesting, however, because of what was said in it as to the manner in which the trial court should deal with proffered confessions. We said:

"Of course, if the confession was involuntary or extorted through hopes or fears held out to her by the officers, it was not receivable in evidence. The admissibility of the confession is a question for the court in the first instance, but if it is held to be voluntary and admissible, the weight and credibility of the evidence are to be determined by the jury. In this respect the function of the judge is somewhat like that exercised when he is called upon to determine the admissibility of a dying declaration. There the court must decide as a preliminary question whether the declaration was made under a sense of impending dissolution, but after the evidence is admitted, its credibility is entirely within the province of the jury. (*The State v. Reed,* 53 Kan. 767, 37 Pac. 174.) The jury may not reject a confession as evidence, but it is to be taken into consideration with the other evidence in the case, and the jury is at liberty to repudiate any part of the confession which they do not believe. (12 Cyc. 482; 2 Wigmore on Evidence, § 1451; 16 C. J., § 2287.) As to the voluntary character of the confession, there was a direct conflict in the testimony of the defendant and that produced by the state. This conflict is to be determined like any other question of fact, and the finding by the court that it was voluntary puts that question at rest. The finding, of course, is open to review, but as the court had a much better opportunity to ascertain the truth than the reviewing court can have, its conclusion, supported as it was by competent evidence, cannot be disturbed." (p. 255.)

Had the above procedure been followed here the trial court would first have heard in the absence of the jury witnesses as to whether the purported confession was freely and voluntarily made without

force or coercion. Had the court found such to be the case the confession would have been admitted and the jury instructed that it should give whatever weight on the question of the guilt of the defendant it deemed the confession entitled to, along with the other evidence in the case. The trial court here admitted the confession without at that time considering the question of whether it was freely and voluntarily made without the use of force or coercion, and failed altogether to instruct the jury as to the manner in which a confession should be considered in its deliberations. This was error.

There is another question in this case which requires our attention since the case is to be retried. This defendant was only seventeen years old, he was taken to the police station where he was questioned by the chief of police and the sheriff. He was not given the benefit of counsel nor were his parents advised of his whereabouts. At this time his confession was obtained. As a part of this interrogation and examination he was caused by the sheriff to write his name several times at the direction of the county attorney. These specimens of his handwriting were used by the handwriting expert who testified at the trial. On cross-examination when asked the direct question of whether any one advised the defendant that any statement he made or any writing he made would be used against him, the sheriff answered that he could not remember. This under the circumstances is tantamount to an admission that nothing of the sort was told to defendant. Certainly it falls far short of direct proof that any such statement was made. We have concluded that in view of the age of the defendant, the fact that he was held and questioned without his family being informed, and that he was not advised of his right to counsel, and that these specimens of his handwriting might be used against him all rendered these specimens inadmissible and it was error for the trial court to permit their introduction and to permit the handwriting expert to use them in his testimony.

The judgment of the trial court is reversed with directions to grant the defendant a new trial in accordance with the views expressed herein.

Hoch, J., not participating.