No. 42,092

State of Kansas, *Appellee*, v. William E. Jenkins, *Appellant*.

(421 P. 2d 33)

Opinion filed December 10, 1966.

*William G. Gray*, Overland Park, argued the cause and was on the briefs for the appellant.

*James W. Bouska*, Assistant County Attorney, argued the cause, and *Hugh H. Kreamer*, County Attorney, *Robert C. Londerholm*, Attorney General, and *J. Richard Foth*, Assistant Attorney General, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: The defendant, William E. Jenkins, while an escapee from the Kansas State Penitentiary, was arrested in Wichita and returned to the penitentiary and later to Johnson County to face a charge of grand larceny of an automobile. He was tried and

convicted by a jury in March, 1960. Thereafter the trial court heard and overruled a motion for a new trial and sentenced defendant to a term of not less than fifteen nor more than forty-five years in the state penitentiary pursuant to G. S. 1949, 21-107a (now K. S. A. 21-107a).

In April, 1960, the defendant *pro se* filed a notice of appeal. On motion of the state the appeal was dismissed by this court on March 21, 1961.

The defendant filed a motion on September 18, 1964, to vacate the sentence previously imposed in the sentencing court. The court appointed counsel and issued a writ of habeas corpus ad testificandum for the return of defendant to Johnson County.

After hearing evidence and argument of counsel the trial court overruled defendant's motion to vacate but properly held that it should be construed as a motion including a request for the appointment of counsel pursuant to Rule No. 56 of this court (Prefatory Rule No. 1 [f], 194 Kan. xii).

Present counsel was then appointed and on defendant's motion his appeal was reinstated on April 1, 1965.

The defendant makes four assignments of error in his appeal: (1) The trial court erred in admitting defendant's written statement; (2) the trial court erred in submitting instructions Nos. 7 and 9 and refusing to submit defendant's requested instruction No. 1; (3) the verdict was not sustained by sufficient competent evidence; and (4) the trial court erred in overruling defendant's plea in abatement. The assignments of error will be considered chronologically.

The defendant relies mainly on his first assignment of error for reversal. He argues the trial court, after hearing evidence out of the jury's presence, erred in determining that a statement made by defendant, after his return to the penitentiary, was freely and voluntarily made without coercion and then admitting portions of it in evidence.

A summary of the evidence is necessary to consider defendant's contentions.

Mrs. Vernon Bowman, the wife of the owner of the stolen Cadillac automobile, testified that it was missing on the morning of October 12, 1959, from where it had been parked in the street in front of their residence the previous evening. Two days later, on October 14, the automobile was discovered on a parking lot in

Wichita by three Wichita policemen. The defendant was questioned and advised the officers that not he but his brother in Overland Park owned the automobile. The officers told defendant to lock the car and accompany them to the police station. The defendant pulled the key out of his pocket, locked the car and accompanied the officers to the station.

The details are not disclosed in the record but apparently the defendant was returned to the penitentiary on October 15, 1959, the day following his apprehension in Wichita. On October 28, 1959, the defendant was brought to the office of Sherman Crouse, Deputy Warden of the penitentiary, and the statement about which defendant complains was taken. Lieutenant Jensen, a penitentiary officer, and H. G. White, the warden's administrative assistant, were present.

When the statement was offered in evidence by the state the jury was dismissed, and the court heard the testimony of Crouse concerning the taking of the statement. According to the testimony of Crouse the defendant was confined to the isolation unit of the penitentiary on his return and had been so confined for thirteen days prior to the taking of the statement. Crouse testified further that defendant was brought in for disciplinary action for escaping from the institution and that the statement was taken to determine why he left and what mode of travel he used. The interrogation of defendant was conducted by Crouse, who further testified that before the statement was given the defendant was advised he did not have to make a statement and that he did not have to sign it.

Crouse described the isolation cell as being equipped with only a wash basin and lavatory during the day. At night defendant was given a mattress and blanket. Clothing consisted of coveralls, socks and slippers and did not include a jersey or underclothing. In isolation all meals were served unseasoned, breakfast consisted of oatmeal with milk; lunch was raw carrots, raw cabbage and an unseasoned boiled potato; and the evening meal consisted of raw carrots or raw cabbage or slaw. In prison parlance the isolation unit is commonly referred to as "the hole."

Crouse did not recall telling the defendant the statement could be used in court against him. He testified that the defendant was not treated any differently from any other escapee and was not treated differently after he made the statement nor any differently than persons who refused to give a statement, and that defendant

served out his assigned thirty-one days in isolation. The isolation time had no bearing on whether defendant gave a statement or not. The reason and purpose for disciplinary action is to establish the amount of good time to be lost and the length of confinement in the isolation unit and the facts established by the statement are considered in determining those matters.

The testimony of Crouse was the only evidence submitted to the court on the issue of the admissibility of the statement.

After hearing the testimony of Crouse the trial court ruled as follows:

"The question is, did he voluntarily make the statement, and was any force, duress, coercion used to get the statement, or any promises, or open reward, or leniency. The evidence has gone into, in great detail, as to how disciplinary action at Lansing is handled, and how prisoners under disciplinary action are treated and cared for. However, I do not believe there is any evidence that I can recall, that showed any threats, force, or coercion used to get this statement, or that there was any promises or hopes or reward given out, or leniency for making the statement, either that he would not be prosecuted for the escape, or for the theft of the automobile, or that disciplinary action at Lansing would be lightened. The evidence also shows that he was given an opportunity to read this statement, and he did read it and that he said it was correct, and he signed it."

The court then set out the portion of the statement that would be admitted.

When the jury was recalled Crouse testified that the statement was signed by defendant in the presence of Lt. Jensen and H. G. White, that it was given voluntarily by defendant and that he, Crouse, made no threats or promises to defendant to induce him to sign the statement and that defendant read such statement.

The portion of the statement admitted by he court was in question and answer form. It was read to the jury by Assistant County Attorney Bouska as follows:

"Mr. Bouska: C: What town did you come to? J: I don't know, I came to the edge of some town on Sunday night. Yes, it was Olathe. That is where my detainer came from. I was still wearing the same clothes. I had no money to eat on. C: What kind of a car did you take? J: It was a Cadillac convertible. I had no intention in taking it. I was just going to get into it and sleep. The keys were in it, so I turned them on and the tank was full of gas. That was it. I just took off. I had been walking at night and hiding through the days. I was tired, wet and hungry."

The defendant's counsel objected on the ground that it was not a free and voluntary statement knowingly given by the defendant

with the knowledge of his rights and was made under implied coercion or promises of leniencies.

The defendant argues that *State v. Seward,* 163 Kan. 136, 181 P. 2d 478, supports his position. In the *Seward* case a seventeen-year-old boy was arrested, taken to police headquarters, questioned without notice to his parents and directed to sign several pieces of paper without any of the usual warnings. At the trial a purported confession was admitted by the court without a preliminary investigation in the absence of the jury, and the jury was not instructed as to how it should consider the confession or evaluate its credibility. On appeal the conviction was reversed and a new trial granted because the trial court refused to hear evidence or consider, as a preliminary matter, whether the confession was freely and voluntarily made without force or coercion. The trial court's failure to instruct the jury that it should consider the truth or falsity of the confession along with the other evidence in the case was held to be a further ground for reversal.

We fail to see any similarity between *Seward* and the instant case. In fact the trial court here followed precisely the admonition of this court in *Seward* where we stated:

"The question of whether the confession had been freely and voluntarily made without force or coercion being used, and without promises, should have been in the first instance considered by the trial court in the absence of the jury and before it was offered to the jury. Then if the trial court had been convinced that it was admissible it could have been given the jury *under proper instructions.*" (Emphasis supplied.) (p. 144.)

In *Seward* the case of *State v. Hayes,* 106 Kan. 253, 187 Pac. 675, was cited as authority for the manner in which a trial court should deal with a proffered confession. In the *Hayes* opinion we said:

". . . Of course, if the confession was involuntary or extorted through hopes or fears held out to her by the officers, it was not receivable in evidence. The admissibility of the confession is a question for the court in the first instance, but if it is held to be voluntary and admissible, the weight and credibility of the evidence are to be determined by the jury. In this respect the function of the judge is somewhat like that exercised when he is called upon to determine the admissibility of a dying declaration. There the court must decide as a preliminary question whether the declaration was made under a sense of impending dissolution, but after the evidence is admitted, its credibility is entirely within the province of the jury. (*The State v. Reed,* 53 Kan. 767, 37 Pac. 174.) The jury may not reject a confession as evidence, but it is to be taken into consideration with the other evidence in the case, and the jury is at liberty to repudiate any part of the confession which they do not believe. (12 Cyc. 482; 2 Wigmore on Evidence, § 1451; 16 C. J., § 2287.)

As to the voluntary character of the confession, there was a direct conflict in the testimony of the defendant and that produced by the state. This conflict is to be determined like any other question of fact, and the finding by the court that it was voluntary puts that question at rest. The finding, of course, is open to review, but as the court had a much better opportunity to ascertain the truth than the reviewing court can have, its conclusion, supported as it was by competent evidence, cannot be disturbed." (p. 255.)

See, also *State v. Robinson*, 182 Kan. 505, 322 P. 2d 767, and *State v. Demain*, 127 Kan. 716, 275 Pac. 139.

In instruction No. 10 the credibility of the statement was left entirely within the province of the jury with directions that the jury should consider the statement with other evidence in the case and might repudiate any part not believed.

The defendant argues that statements taken from prisoners already serving a sentence for a prior conviction should be subject to even more stringent safeguards than those of persons outside prison. We know of no authority supporting defendant's argument. Our research discloses several cases from other jurisdictions holding otherwise. In *Pependrea v. United States*, 275 F. 2d 325, (9th Cir. 1960), appellant was confined in the isolation unit of a federal correctional institution for an unrelated offense. He was questioned by federal agents about two bank robberies and signed written confessions to both offenses. When the confessions were offered the trial court heard evidence in the absence of the jury. The appellant testified that his purpose in signing the confessions was "to get out of the hole." The trial court, finding no inducement by means of any promise or threat, ruled against appellant and admitted the confessions submitting the case to the jury under proper instructions. Conviction in the trial court was affirmed on appeal.

The admission of a confession under similar circumstances was held not to be error in *State v. Henderson*, 182 Or. 147, 184 P. 2d 392. Similar holdings may be found in *State v. Hofer*, 238 Iowa 820, 28 N. W. 2d 475; *State v. Lewis*, 112 La. 872, 36 So. 788; and *State v. Moore et al.*, 124 Or. 61, 262 Pac. 859.

It is true defendant was without counsel when the statement was made. However, he made no request for counsel, and if the statement was voluntarily made we have consistently held it would not be inadmissible solely because of the absence of counsel. (See *State v. Stubbs*, 195 Kan. 396, 407 P. 2d 215; and *Powers v. State*, 194 Kan. 820, 402 P. 2d 328.)

Whether the restrictions as to "in custody interrogation" announced in *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977,

84 S. Ct. 1758, and *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, are applicable here need not be determined since the principles enunciated in those cases have only prospective application. (*Johnson v. New Jersey*, 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772.)

It appears from the record the trial court discharged its preliminary duty to decide for itself, in the first instance, whether or not the statement was voluntarily made and then properly submitted to the jury the question of what credibility should be attached to it. The trial court's determination was based on the testimony of Deputy Warden Crouse which was not controverted. The trial court was in a much better position to determine the issue than a reviewing court and since its conclusion was supported by competent evidence it cannot be disturbed.

The court refused defendant's requested instruction dealing with the unexplained possession of recently stolen property. The instruction submitted by the court is identical with that requested by defendant except for an additional sentence in the requested instruction. The sentence which defendant insists should have been added to the court's instruction reads as follows:

"However, possession as used in this instruction must have been so recent after the time of the taking of the automobile as to render it morally certain that such possession could not have changed hands since the time of the taking."

Defendant cites the early case of *State v. Cassady*, 12 Kan. (2nd Ed.) * 550, where it was held:

"While the recent possession is a circumstance pointing towards guilt, and therefore always competent as evidence, yet before it can be deemed sufficient, standing by itself, to warrant a conviction, it must be so recent after the time of the larceny as to render it morally certain that the possession cannot have changed hands since the larceny." (Syl. ¶ 6.)

While the holding in paragraph 6 of the syllabus of *Cassady* is a correct recitation of the law there is no indication in the opinion that the term "morally certain" was actually included in the court's instruction. The only reference to the instruction submitted is found at page * 559:

". . . On the contrary, at the instance of the prosecuting attorney, the court instructed the jury that 'the possession of stolen goods recently after they are stolen is a strong presumption of guilt.' . . ."

The trial court was upheld in submitting this instruction and refusing one requested by defendant to the effect that defendant must be acquitted if proof of possession established possession of

the stolen furs in question only in the State of Missouri. The latter point was the main issue in *Cassady*.

An examination of the many Kansas cases since *Cassady* which deal with this subject reveals that instructions essentially the same as that given here have always been approved regardless of whether the "morally certain" statement has been appended. We find no case where failure to include the statement resulted in criticism on appeal or in a reversal of the conviction, even though when included the instruction has also always been approved.

Some of the cases approving instructions with the "morally certain" statement included are *State v. Hoffman*, 53 Kan. 700, 37 Pac. 138; *State v. Bratcher*, 105 Kan. 593, 185 Pac. 734, and *State v. McMahan*, 131 Kan. 257, 291 Pac. 745.

A few of the cases approving an instruction which did not include the appended statement are *State v. Henry*, 24 Kan. (2nd Ed.) * 457; *State v. White*, 76 Kan. 654, 92 Pac. 829; *State v. Bell*, 109 Kan. 767, 201 Pac. 1110, and *State v. Cone*, 171 Kan. 344, 232 P. 2d 470.

We find no particular significance attached to the phrase in any of the decisions dealing with the subject and when the instruction is submitted as it was in the instant case, together with appropriate instructions as to reasonable doubt, presumption of innocence and burden of proof, the omission cannot be said to amount to prejudicial error.

In this case the automobile was missed by the owner on October 12, 1959, and it was found in defendant's possession on October 14. The automobile could have been taken during the evening of October 11, therefore the greatest interval could have been only three days. A lapse of three days is well within the "shortly after" provision of the rule. The rule has been applied in this jurisdiction where the lapse of time has ranged from an hour or two to as much as several weeks. In *State v. Bartholomew*, 116 Kan. 590, 227 Pac. 366, we held that unexplained possession of a stolen automobile two weeks after the theft was competent evidence and sufficient to sustain a guilty verdict.

The defendant next contends the evidence is insufficient to show he took the automobile from Johnson County. Even without considering defendant's statement, the evidence shows the automobile missing in Overland Park, Johnson County, and recovered in defendant's possession two days later.

When confronted with the same contention in *State v. Shanahan*, 114 Kan. 212, 217 Pac. 309, where an automobile disappeared in Florence, Marion County, and was found six days later in Wichita in the possession of defendant, we stated:

"There was no witness who saw the defendant in Marion on the day of the theft, nor testimony that the defendant was outside the city of Wichita. But, it is argued that in cases of this kind such testimony is not procurable. The modern automobile thief does not approach the scene of his depredations with an announcement of what he proposes to do, but on the contrary, he slips quietly into a strange town, waits in the darkness, and the moment his victim's car is left unguarded he takes his place at the wheel, touches the button and escapes with the fruits of his crime."

. . . . . . . . . . . . . .

". . . To them the defendant offered no satisfactory explanation of his possession of the stolen car. The record discloses no substantial reason why the verdict of the jury should be set aside." (pp. 214, 215.)

We find ample competent evidence in the record here to sustain the verdict.

Finally defendant contends his plea in abatement was erroneously overruled. The plea in abatement was based on a mistake of the magistrate citing G. S. 1957 Supp., 21-533, rather than Sec. 1, Chap. 161, Laws of 1959 (G. S. 1961 Supp., 21-533, now K. S. A. 21-533), which amended the former statute. The district court permitted the amendment of the magistrate's transcript and overruled the plea in abatement.

The defendant does not contend that he was confused, misled or not apprised of the charge. In such cases this court has consistently allowed the amendment of a preliminary hearing transcript. (*Uhock v. Hand*, 182 Kan. 419, 320 P. 2d 794; *State v. Miner*, 120 Kan. 187, 243 Pac. 318; and *State v. Handrub*, 113 Kan. 12, 213 Pac. 827.)

In *State v. Howland*, 153 Kan. 352, 110 P. 2d 801, we said:

". . . It has been said on many occasions that a general finding made by the examining magistrate that an offense has been committed and that there is probable cause to believe the defendant is guilty of its commission is a sufficient compliance with the criminal code. . . ." (p. 357.)

No error being made to appear the judgment is affirmed.