No. 41,643

State of Kansas, *Appellee*, v. James Jacob Stubbs, *Appellant*.

(407 P. 2d 215)

Opinion filed November 6, 1965.

*Donald H. Humphreys,* of Great Bend, argued the cause, and was on the briefs for the appellant.

*Robert L. Bates,* assistant county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, and *Brock R. McPherson,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: This is a direct criminal appeal which reaches this court in the following manner: In December 1958 the defendant was convicted by a jury of murder in the second degree (G. S. 1949, 21-402). Defendant filed a motion for new trial, which was denied. Having been twice convicted of felonies on previous occasions, he was sentenced under the habitual criminal statute (G. S. 1949, 21-107a) to a term of sixty years in the state penitentiary. De-

fendant filed notice of appeal and requested this court to appoint counsel, which request was denied. He then presented his brief *pro se* on appeal. The judgment and sentence of the trial court were affirmed in *State v. Stubbs*, 186 Kan. 266, 349 P. 2d 936, cert. den. 363 U. S. 852, 4 L. Ed. 2d 1734, 80 S. Ct. 1632. A detailed statement of facts is set forth in the opinion. In November 1964 present counsel was appointed, and upon defendant's application this court recalled the original mandate and ordered his appeal reinstated. This matter has also been before us in an original proceedings in habeas corpus. (See *Stubbs v. Crouse*, 192 Kan. 135, 386 P. 2d 227.)

Defendant raises several points not advanced in his original appeal. These pertain to the alleged violation of his constitutional rights, and more specifically, to (1) the admissibility of his written statement at the trial, (2) the delay between the time of his arrest and the time he was brought before an examining magistrate, during which period his written statement was obtained, and (3) the lack of notice that he would be sentenced under the habitual criminal act.

It appears from the record defendant surrendered to the police on the morning of Friday, September 5, 1958, at approximately 1:00 a. m., but was not interrogated until 1:15 p. m. He was upset, and at his request was returned to jail. He was questioned no further until approximately 10:00 a. m., Saturday, September 6, when he agreed to give a statement. The statement was given at 11:45 a. m., transcribed, and signed about 4:30 p. m. Thereafter, the defendant was detained until he was taken before an examining magistrate on Monday, September 8, on which date counsel was appointed to represent him.

Defendant first contends his statement constituted illegal testimony and was inadmissible because he was not furnished counsel after he had requested it prior to making the statement and thus was denied due process of law and assistance of counsel in violation of the sixth amendment of the United States Constitution. The basic question involved on this point is whether or not while under arrest an accused's statement made during a pretrial interrogation by law enforcement authorities is rendered involuntary and inadmissible because of the absence of counsel at the time it is made.

Defendant relies primarily upon *Massiah v. United States*, 377 U. S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, and *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, to support his con-

tention. In the *Massiah* case the defendant was indicted, arrested and freed on bond after employing an attorney. Federal agents, with the assistance of the defendant's confederate, installed a radio transmitter in the confederate's automobile and overheard the defendant's unguarded admissions, which were later used against him at trial. These admissions were made in the absence of retained counsel. The court held the admissions were inadmissible. The facts of the case are not analoguous to those of the instant case.

In the *Escobedo* case a suspect in a murder case made certain incriminating statements after he had requested and had been denied an opportunity to consult with his retained counsel and without being warned of his right to remain silent. Mr. Justice Goldberg, speaking for a majority of the court, said:

"The critical question in this case is whether, *under the circumstances,* the refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation constitutes a denial of 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' . . . and thereby renders inadmissible in a state criminal trial any incriminating statements elicited by the police during the interrogation.

. . . . . . . . . . . . . . . .

". . . We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, *under the circumstances here,* the accused must be permitted to consult with his lawyer." [Our emphasis.]

The facts presented in the *Escobedo* case are in sharp contrast to those of the instant case. Escobedo was a twenty-two-year-old boy of Mexican extraction with no previous police record, while Stubbs was a forty-four-year-old man with several prior criminal convictions, and who was no stranger to the "Halls of Justice." Escobedo had employed a lawyer and repeatedly requested the opportunity to consult with him; his request was denied, although his lawyer was in an outer room seeking permission to speak to his client. There is no evidence that Stubbs was denied counsel or was refused a request to see or call his attorney. No one advised or inquired whether or not Escobedo understood his constitutional rights, while in the instant case the county attorney inquired whether or not Stubbs fully understood his constitutional rights and received an affirmative reply prior to Stubbs' giving the statement. In *Escobedo* the "petitioner had become the accused, and the purpose of the interrogation was to 'get him' to confess his

guilt despite his constitutional right not to do so," while Stubbs was only one of two suspects under investigation at the time he made his statement.

The defendant would ask this court to declare that an accused has a constitutional right to have counsel provided at the investigative stage of the proceedings when a written statement is given by him to the police in order for the statement to be admissible. Neither *Escobedo* nor any other decision called to our attention has held that statements or admissions to police officers are inadmissible solely because they are made at a time when the accused did not have counsel. (*Latham v. Crouse*, 320 F. 2d 120 (10th Cir. 1963), cert. den. 375 U. S. 959, 11 L. Ed. 2d 317, 84 S. Ct. 449; *Otney v. United States*, 340 F. 2d 696, (10th Cir. 1965).

In *Powers v. State*, 194 Kan. 820, 402 P. 2d 328, a written confession was made by the accused prior to arraignment and before he was represented by counsel. The accused was advised of his right to consult with an attorney prior to the taking of the statement, but he made no request for counsel. In holding that the accused's rights were not violated by the absence of counsel, this court said:

". . . the Federal Supreme Court has never said one accused of crime is an incompetent person and entitled to counsel as such at every stage in a criminal proceeding.

"No case is cited which states or suggests that counsel must be provided at the investigation stage, or preliminary hearing stage, of a criminal case in Kansas, where the defendant has not requested counsel, has been informed of his rights to counsel, and makes an intelligent waiver, as the appellant did in the case presently before the court." (p. 824.)

Stubbs contends he had requested and had been denied the opportunity to consult with an attorney prior to the giving of his statement. This contention is based on an isolated portion of his direct examination where he testified: "Mr. Phillips asked me if I had money for an attorney. He asked me if I could get an attorney. I said, 'No, I would like to have one.' There was nothing else said about an attorney until after they had got their confession. Then I had appointed attorneys."

The following testimony was elicited on cross-examination of the defendant by the county attorney:

"Q. Is it not true before you signed this you read that statement?
"A. Did I have any choice? I never had no counsel."

In our opinion a fair reading of the defendant's uncorroborated testimony can hardly be construed as a request for and denial of

counsel. Further, a search of the record fails to reveal anything that would amount to an affirmative request by the defendant to consult a lawyer or a denial of such a request.

Defendant further contends his constitutional rights were not effectively explained to him prior to his making the statement. The statement was taken by a court reporter in question-and-answer form, with questions being propounded by the county attorney. The pertinent portion of the statement relating to this point is as follows:

"Q. And Jim, you understand what we are doing right now is taking a court reporter statement?
"A. Or a confession, either way you want to call it.
"Q. And you have not been promised anything, isn't that right?
"A. That's right.
"Q. And we have made no threats whatsoever?
"A. None whatsoever.
"Q. And you fully understand your constitutional rights?
"A. Yes, sir."

The record is devoid of any further evidence indicating the defendant's rights were not explained to him. The defendant does not assert in what way he failed to understand or be advised of his constitutional rights. Under similar facts this court held in *State v. Haught,* 180 Kan. 96, 299 P. 2d 573, that one cannot later complain he was not apprised of his constitutional rights after stating to law enforcement officers that he had previously been arrested on felonies and knew these rights. Defendant's complaint on this point has no merit.

Defendant's contention that his statement was rendered inadmissible because it was given under coercion and was involuntary is based on his testimony that during the interrogation the county attorney and a law enforcement officer threatened to file a second degree murder charge against the defendant's wife if he did not tell them a story they liked. As revealed in the original opinion, this evidence was controverted by the officer's testimony. The trial court made an independent determination out of the presence of the jury, as required by our decision in *State v. Seward,* 163 Kan. 136, 181 P. 2d 478, and determined that the statement was freely and voluntarily made. The court's finding was supported by substantial evidence. What was said in the original opinion is controlling on this point, and defendant's contention deserves no further consideration.

Defendant's second point relates to the delay between the time of his arrest and the time he was brought before the examining

magistrate. He contends that the delay was such as to deny him due process of law, thereby rendering his statement inadmissible.

Defendant relies upon *Mallory v. United States,* 354 U. S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356, which, in effect, applied the rule established in *McNabb v. United States,* 318 U. S. 332, 87 L. Ed. 819, 63 S. Ct. 608, and held that illegal detention of an accused resulting from noncompliance with Rule 5(a) of the Federal Rules of Criminal Procedure, which requires a federal officer making an arrest to take the arrested person "without unnecessary delay" before the nearest available commissioner, rendered inadmissible a confession obtained during such detention.

The *McNabb* rule was later tempered somewhat in *United States v. Mitchell,* 322 U. S. 65, 88 L. Ed. 1140, 64 S. Ct. 896. In that case a housebreaking suspect, after being taken into custody, voluntarily admitted his guilt and consented to the officers' recovering the property from his home. The defendant on appeal contended the oral admission and the recovered property were barred by the *McNabb* rule. The court held, however, that the admissions of guilt and the property thus recovered were admissible in a criminal prosecution in a federal court, and that the admissibility of the evidence was not affected by subsequent illegal detention of the suspect for eight days before arraignment. The court, in its opinion, carefully distinguished the facts of the case from *McNabb* and concluded there were no disclosures by the accused induced by illegal detention.

Defendant recognizes that Kansas has no similar statute to Rule 5(a) of the Federal Rules of Criminal Procedure; however, he contends that state courts are nevertheless bound by the requirements of due process of law and fair play to adopt the federal rule.

The state courts generally have refused to apply the *McNabb* rule in criminal prosecutions and have followed the rule that the illegal detention of an accused does not of itself render a confession involuntary and inadmissible. In other words, a confession obtained during a period of illegal detention is admissible if voluntarily made and not the product of the detention. For example, see *Thacker v. State* (Okla.), 309 P. 2d 306; *State v. Hodge,* 252 Iowa 449, 105 N. W. 2d 613; *State v. Jordan,* 83 Ariz. 248, 320 P. 2d 446; *State v. Johnson,* 43 N. J. 572, 206 A. 2d 737. See, also, Anno., 19 A. L. R. 2d 1331, *et seq.,* and 23 C. J. S., Criminal Law, § 817 (6).

In this state we have consistently rejected the *McNabb* rule. In *State v. Smith,* 158 Kan. 645, 149 P. 2d 600, the defendant was

arrested on August 1, 1943, and held in jail without a complaint being filed until August 4. During this period the defendant, on August 2, made admissions to A. R. Blunk. When Blunk was called as a witness at the trial the defendant objected to any of his testimony with respect to conversations had with the defendant on the ground it was apparent the conversation inquired about took place prior to the time the defendant was brought before a magistrate, and that any statements or admissions made by him prior to that time or prior to the time he had been given an opportunity to consult with counsel, irrespective of their voluntariness, were inadmissible. This court, after rejecting the *McNabb* rule, adhered to our former decisions which held confessions or admissions against interest were admissible if freely made without inducement or duress or obtained by some other improper means.

In *Converse v. Hand,* 185 Kan. 112, 340 P. 2d 874, we said that *Mallory v. United States,* supra, was applicable only to federal rules of criminal procedure and not to state criminal proceedings. In *State v. Latham & York,* 190 Kan. 411, 375 P. 2d 788, 373 U. S. 919, 10 L. Ed. 2d 418, 83 S. Ct. 1310, we refused to apply the *McNabb* rule, saying it applied only to a federal prosecution. We therefore conclude the holding of the *Mallory* case has no application to this, a state criminal proceeding.

We now pass to Stubbs' third point that his opportunity for a full and fair trial was denied by lack of notice he would be sentenced under the habitual criminal act. He claims no notice was given him prior to or during trial, and in fact, he had no notice until the very time the judge pronounced sentence. Stubbs contends the lack of notice constituted a denial of due process of law.

An examination of the record reveals the defendant testified on direct examination that in 1934 he was sentenced to two years' imprisonment in the reformatory in the state of Missouri for larceny and that in 1938 he was sentenced to the Missouri State Penitentiary to a term of four years for burglary and larceny from Joplin. At the time of sentencing the trial court stated that the testimony in the case showed the defendant had been convicted for two previous criminal offenses and had served time. The journal entry of judgment recites a finding by the trial court that from the records and from the evidence testified to by the defendant himself, as well as other competent evidence, the defendant had been previously convicted of a felony on two different occasions. Then followed a

detailed description of the convictions about which the defendant had also previously testified. Such findings satisfy the requirements of K. S. A. 21-107a. Further, it appears from the record that at the time of allocution, and after the court's statement mentioned above, the defendant replied, "I have nothing to say."

Defendant, in support of his contention of denial of due process, cites numerous cases from the federal courts, and particularly relies on *Browning v. Hand,* 284 F. 2d 346, cert. den. 369 U. S. 821, 7 L. Ed. 2d 786, 82 S. Ct. 833. A similar contention was raised by the petitioner in a habeas corpus proceeding in *Sanders v. Hand,* 190 Kan. 457, 375 P. 2d 785. In holding that the petitioner was not denied due process, the court said:

". . . We are of the opinion that the case before us is controlled by *Browning v. Hand,* 284 F. 2d 346, cert. den. 369 U. S. 821, 7 L. Ed. 2d 786, 82 S. Ct. 833, and fully ascribe to what was said and held in that opinion. There, as here, the petitioner was not informed of the state's intention to request sentencing as an habitual criminal until he was before the court for judgment and sentence. In upholding the increased sentence against a charge of denial of due process because of lack of notice, the court said:

"'. . . One convicted of a felony in Kansas is entitled to notice of the hearing held to determine whether he is subject to the provisions of the habitual criminal statute, and due process requires notice. This is, however, a right which can be waived. *Cf. Michel v. State of Louisiana,* 350 U. S. 91, 76 S. Ct. 158, 100 L. Ed. 83; *Hawk v. Olson,* 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61; *Adams v. United States,* 317 U. S. 269, 275, 63 S. Ct. 236, 87 L. Ed. 268; *Yakus v. United States,* 321 U. S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834; *United States ex rel. Jackson v. Brady,* 4 Cir., 133 F. 2d 476, *certiorari* denied 319 U. S. 746, 63 S. Ct. 1029, 87 L. Ed. 1702, rehearing denied 319 U. S. 784, 63 S. Ct. 1315, 87 L. Ed. 1727; *United States v. Gill,* D. C. N. M., 55 F. 2d 399. Assuming that prior notice of the hearing was not given, the defendant was present at the hearing with his attorney, and no contention is made that he did not have full opportunity to be heard on all matters under consideration and to controvert the allegation that he had been convicted of previous felonies which would make him subject to the penalties of the habitual criminal statute. The time for complaint was then, not now. *Cf. Williams v. State of Oklahoma,* 358 U. S. 576, 583, 79 S. Ct. 421, 3 L. Ed. 2d 516.' (p. 347.)" (p. 459.)

Also, see *State v. Messmore,* 175 Kan. 354, 264 P. 2d 911, and *Johnson v. Crouse,* 191 Kan. 694, 383 P. 2d 978, where no notice was given until the time of sentencing that the habitual criminal act would be utilized.

In the instant case the court undeniably had sufficient, competent evidence before it by the defendant himself to support its findings that the defendant had twice before been convicted of felonies. The facts are strikingly similar to those in *State v. Graham,* 172 Kan. 627, 242 P. 2d 1067, in which we stated that documentary

evidence of prior convictions was not necessary when the defendant admitted the convictions and made no claim that his testimony in that respect was not true. Also, see *State v. Watkins,* 190 Kan. 446, 375 P. 2d 634, and the numerous cases cited in *State v. Ralph,* 194 Kan. 356, 399 P. 2d 548.

The defendant argues further that he would not have taken the stand had he had notice he was to be sentenced under the habitual criminal act. His statement in his brief that without his testimony there would have been no evidence upon which the court could have predicated the increased sentence is purely speculative. The cases heretofore cited reveal that evidence of prior convictions may be brought before the sentencing court by means other than the defendant's own testimony.

We have further examined the defendant's various other arguments concerning the trial court's authority to pronounce an increased sentence under the circumstances, and they are without merit.

In the instant case the defendant was present in court in person and by counsel at the time of sentencing. He was fully informed by the court of his two prior convictions. In fact, he had testified about them on his direct examination at the trial. Neither he nor his attorney raised any objection at the time of allocution. The time for complaint was then, not now. The defendant's claim that he was denied due process of law because of lack of notice under the circumstances is rejected.

The remaining points on appeal advanced by the defendant through his court-appointed counsel pertain to alleged trial errors and were all treated in the original opinion, with the exception of the admissibility of photographs of the deceased victim. We ascribe to what was said in *State v. Turner,* 193 Kan. 189, 392, P. 2d 863, and the admission of the photographs did not deny the defendant a fair trial in the instant case. Inasmuch as nothing new in the way of argument or authority has been brought to our attention by industrious counsel, we are satisfied with what was said and decided in our original opinion on these points.

In this appeal the defendant has had the benefit of a competent member of the bar of this state who has thoroughly presented the various points heretofore discussed. We have carefully reviewed the record and conclude the trial court did not err in any of the particulars of which complaint is made.

The judgment of conviction and sentence is affirmed.