No. 41,828

STATE OF KANSAS, *Appellee*, v. JOHN THOMAS FREEMAN, *Appellant*.

(408 P. 2d 612)

Opinion filed December 11, 1965.

*B. L. Pringle*, of Topeka, argued the cause, and was on the brief for the appellant.

*Robert D. Hecht,* county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a direct criminal appeal wherein the defendant, John Thomas Freeman, was charged, tried and convicted in May 1959 of the offense of first degree robbery (G. S. 1949, 21-527). Having been convicted of felonies on four previous occasions, he was sentenced to life imprisonment in the state penitentiary under the habitual criminal statute (G. S. 1949, 21-107a). The defendant's appeal, having previously been dismissed by this court for failure to comply with certain appellate procedural rules, was reinstated in April 1965. Present counsel, who assisted court-appointed counsel at the trial, was appointed for the defendant on this appeal.

Preliminary to a discussion of alleged errors occurring at the trial, the evidence will be reviewed. There was conflict between the testimony of the state's witnesses and that of the defendant, but, as has been held, the credibility of witnesses and the weight of their testimony are not subjects for appellate review, and in considering the sufficiency of evidence to sustain a conviction, this court looks only to evidence favorable to the decision, and if the essential elements of the charge are sustained by any legally admitted evidence, the conviction stands. (*State v. Greer,* 163 Kan. 592, 593, 184 P. 2d 991, and cases therein cited.) Under the rule stated, the following facts were established:

On September 12, 1958, about 7:30 p. m., Sutton's, Inc., a grocery store located in North Topeka, was robbed at gunpoint of over $19,500 by Freeman and his accomplice, Glenn Roy Maynard. Freeman approached the cashier's booth, pointed a gun at the cashier, Verna Brown, and demanded the money from the safe. The cashier complied with Freeman's demand and handed to him from the safe a bag containing the money. At the same time one of the cash registers was being robbed by Maynard. The two men then fled the supermarket in a 1950 black Chrysler automobile bearing Osage county license plates, No. 1382.

Later, on February 20, 1959, while in custody of the United States Marshal in Baltimore, Maryland, for reasons not reflected by the record, Freeman was interviewed by two Florida law enforcement officers, Montie Smith and Carl W. Christy, who were interested in

an incident that occurred in Florida, the nature of which again is not a part of the record. During this interview Freeman orally admitted to Smith and Christy his participation in the Sutton robbery, the amount of money obtained and the disposition made of it.

Subsequently Freeman was returned to Kansas, and in a police line-up was positively identified by Mrs. Brown as the man who had robbed the store.

In his defense Freeman denied his guilt, denied ever having been in Kansas, except for a corner of the state, and claimed alibi.

The state rebutted Freeman's testimony, and particularly his purported alibi, by offering into evidence certain items of personal property bearing Freeman's fingerprints which were found in a 1957 Ford Thunderbird in Lebo, Kansas, on the day of the robbery, together with items discovered in a 1950 Chrysler automobile bearing Osage county, Kansas, license tags, No. 1382, found parked in Omaha, Nebraska, on September 24, 1958. All of these items were admitted into evidence over the defendant's objection and will be dealt with later.

It should be noted at this point the defendant's motion for new trial presented only two grounds, namely, the court admitted illegal testimony over the objections of the defendant timely made, and the verdict of the jury was contrary to the law and evidence. The motion was filed, argued and overruled immediately after the jury returned its verdict finding the defendant guilty. Defendant appealed from the order overruling his motion for a new trial, and those specifications which are fairly within the purview of the grounds of said motion will first be considered.

Freeman first contends the trial court erred in admitting the testimony of Mrs. Brown identifying him as a participant in the robbery. He asserts Mrs. Brown identified him on the basis of the sound of his voice, which was in violation of his constitutional right against self-incrimination. The record discloses that at the trial Mrs. Brown positively identified Freeman as the man who demanded the money from the safe at the time of the robbery. During her examination, however, she testified she first saw the defendant, after his return to Kansas, at the police station in a show-up. She identified the defendant as the one who robbed her but wanted to hear him talk. The officers then engaged the defendant in conversation about his teeth. She said she was sure of her identification when she heard him speak. No objection was made by the defendant to Mrs.

Brown's testimony regarding her identification of his voice. The state strenuously urges that the defendant is now precluded from raising the matter on appeal.

K. S. A. 60-404, which provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence *unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.*" [Emphasis added.]

codifies the prior law of this state requiring timely and specific objection for a reversal to result because of the erroneous admission of evidence. (See Advisory Committee Notes, Gard's Kansas Code of Civil Procedure Annotated, § 60-404.) The statement is sometimes referred to as the contemporaneous objection rule. As a corollary to the rule, objections to the admissibility of evidence will not for the first time be considered on appeal. (See numerous cases cited in 1 Hatcher's Kansas Digest, Appeal & Error, § 332; 2 West Kansas Digest, Appeal & Error, § 204; 4 Jones on Evidence (5th Ed.) § 975.) The rule is a salutary procedural tool serving as a valuable aid in the orderly disposition of cases at the trial level. It also has a legitimate purpose in the appellate court, whose function is that of review rather than trial *de novo*.

The defendant, conceding that no objection was made to this testimony at the trial, contends, however, that under the holding of *Henry v. Mississippi*, 379 U. S. 443, 13 L. Ed. 2d 408, 85 S. Ct. 564, he is not precluded from raising a federal constitutional question concerning the admissibility of evidence, although he did not comply with a state rule of procedure, namely, the contemporaneous objection rule. The constitutional claim raised in *Henry* dealt with evidence that was obtained as a result of an unlawful search. Inasmuch as we are of the opinion Mrs. Brown's testimony relating to her identification of the defendant by his voice is so clearly not a violation of his constitutional right against self-incrimination no federal question is before us and the decision of *Henry* is inapplicable to the facts of the instant case. We reach this conclusion, although in doing so we are passing upon the admissibility of evidence to which objection was not timely made.

Defendant's astute counsel indicates, and our research reveals, no cases in this jurisdiction relating to whether or not voice communications by an accused for the purpose of identification violate

his privilege against self-incrimination. We do, however, follow the well-established rule that testimony by a witness as to identity of an accused is admissible in evidence if based upon the accused's voice, features, or other distinguishing characteristics. (*State v. Hill,* 193 Kan. 512, 394 P. 2d 106; *State v. Nixon,* 111 Kan. 601, 207 Pac. 854; *State v. Herbert,* 63 Kan. 516, 66 Pac. 235.) Also, see 22A C. J. S., Criminal Law, § 652b; 21 Am. Jur. 2d, Criminal Law, § 368; Anno. 70 A. L. R. 2d 995, *et seq.*

Defendant urges our adoption of the view promulgated in *State v. Taylor,* 213 S. C. 330, 49 S. E. 2d 289, and *Oscar Beachem v. The State,* 144 Tex. Crim. 272, 162 S. W. 2d 706, namely, that should law enforcement officers compel an accused to utter the *exact words* used by a perpetrator of a crime in the presence of witnesses for purposes of identification of his voice, such compulsion is a violation of the accused's constitutional right against self-incrimination. Both of the cited cases are factually distinguishable from the instant case inasmuch as there is no suggestion here that defendant was compelled to speak the exact words used at the time of the robbery.

Our attention has been directed to cases from other jurisdictions where the factual situations are more nearly analogous to that of the case at bar. In *Aaron v. State,* 273 Ala. 337, 139 So. 2d 309, cert. den. 371 U. S. 846, 9 L. Ed. 2d 82, 83 S. Ct. 81, an accused was taken by a deputy sheriff into a room equipped with a one-way window which permitted a witness to observe the accused and hear his conversations without his knowledge. The court held the accused's constitutional right against self-incrimination was not violated by such conduct. Furthermore, a California defendant in *People v. Lopez,* 60 C. 2d 223, 32 Cal. Rptr. 424, 384 P. 2d 16, cert. den. 375 U. S. 994, 11 L. Ed. 2d 480, 84 S. Ct. 634, reh. den. 376 U. S. 939, 11 L. Ed. 2d 660, 84 S. Ct. 794, was placed in a show-up along with a codefendant. The show-up was conducted in a large auditorium where the audience could observe and hear the conversations of the participants while the defendant's view of the audience was obscured by a mesh screen. Lopez contended he and his codefendant were compelled to incriminate themselves by assuming various poses and making statements in response to questions by officers. The court rejected Lopez' contention that his privilege against self-incrimination was violated and said:

". . . There is no indication, on the record before us, that defendants made or were asked to make any statements that would tend to incriminate them. The privilege extends only to testimonial compulsion; requiring de-

fendants to assume a certain pose for purposes of identification, or to speak for voice identification, is not within the privilege. . . ." (p. 244.)

While this precise question has been dealt with by only a few courts, Dean Wigmore indicates that the scope of the privilege against self-incrimination is limited to "testimonial compulsion" (8 Wigmore, Evidence § 2263 [McNaughton rev. 1961]) and that voice identification is nontestimonial in character and thus outside the scope of the privilege (*Ibid.*, § 2265).

After careful consideration of the above cases, we have no difficulty in concluding that under all the facts and circumstances the identification of the defendant by the sound of his voice did not violate his constitutional right against self-incrimination.

Defendant next asserts that the trial court erred in ruling that his oral statements to Smith and Christy, the two Florida police officers, were voluntary and thus admissible in evidence over the defendant's objection. As a basis for such assertion, the defendant contends a prolonged interrogation and a failure to supply counsel render his statements involuntary in violation of his state and federal constitutional rights.

An examination of the record discloses Freeman was taken into custody on February 18, 1959, in Baltimore. Officers Smith and Christy questioned him from 10:00 a. m., February 20, to 12:45 a. m., February 21. Both officers testified that at the beginning of their conversation with the defendant they told him they were Florida police officers and interested in an incident which took place in Florida. They further advised him of his rights to remain silent, to have an attorney present, and that whatever he said might later be used against him in court. The officers testified that no threats or promises were made to him. Thereupon, the defendant gave them a detailed oral confession. No useful purpose would be served by setting out the details. Suffice it to say the confession disclosed a full and complete admission of each and every necessary element of the crime of robbery in the first degree as charged in the information. During the time Freeman was interrogated he was given coffee, and lunch was sent in because he did not want to go back to a cell. Freeman was later taken to Florida where he waived extradition to Kansas, arriving in Topeka on March 10, 1959. Shortly thereafter counsel was appointed for him at his preliminary hearing.

At the trial Freeman took the stand and denied not only his participation in the crime but also having been in Kansas, except across

the edge thereof on the way to Kansas City, Missouri. He further denied making the statements related by Smith and Christy. Although Freeman testified he had no opportunity to contact an attorney, the record fails to show that he requested and was denied counsel prior to his confession.

To sustain his contention that a prolonged interrogation violates the "due process" provided for by the fourteenth amendment, the defendant directs our attention to *Watts v. Indiana,* 338 U. S. 49, 93 L. Ed. 1801, 69 S. Ct. 1347, and *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758. In the *Watts* case the accused was arrested on suspicion of murder and questioned by officers in relays from 11:30 at night until 3:00 the next morning. The same procedure of persistent interrogation by six or eight officers was followed for four days from late afternoon until early morning. After a day of rest the accused finally confessed, following a nine-hour period of interrogation. In holding the confession inadmissible, the court said that due process requires a confession must be the expression of free choice, and it is involuntary when it is the product of sustained pressure by police interrogation. The facts of the instant case are clearly distinguishable from those of the *Watts* case, and there was ample evidence to support the trial court's finding that defendant's confession here was not the product of his detention but was freely and voluntarily made.

We follow the rule that the prolonged detention of an accused does not of itself render a confession involuntary and inadmissible. In other words, a confession obtained during a period of prolonged detention is admissible if voluntarily made and not the product of the detention. (*State v. Stubbs,* 195 Kan. 396, 407 P. 2d 215, and cases therein cited.)

In holding that the decision of *Escobedo v. Illinois,* supra, was inapplicable to the facts in *State v. Stubbs,* supra, we said:

". . . Neither *Escobedo* nor any other decision called to our attention has held that statements or admissions to police officers are inadmissible solely because they are made at a time when the accused did not have counsel. (*Latham v. Crouse,* 320 F. 2d 120 (10th Cir. 1963), cert. den. 375 U. S. 959, 11 L. Ed. 2d 317, 84 S. Ct. 449; *Otney v. United States,* 340 F. 2d 696 (10th Cir. 1965)."

There is a complete absence of any evidence in the record that Freeman requested and was denied the opportunity to consult an attorney prior to making his statements. This is but one factor and circumstance which distinguishes *Escobedo v. Illinois,* supra, from

the instant case. Also, see *Powers v. State*, 194 Kan. 820, 402 P. 2d 328.

Freeman, fully understanding the purpose for which the police interrogated him and sought his admission, does not bring himself within either the spirit or letter of *Escobedo*. He made his confession of his own free will, and to this cogent circumstance we have the added factor that he had been convicted of felonies four times previously and was no novice at police interrogation.

Another of the defendant's specifications of error closely related to his preceding contention has to do with the trial court's failure to instruct the jury that it could not consider the confession if involuntarily given or obtained by duress. The record indicates that no request was made for such an instruction, nor was the matter specified or presented in the defendant's motion for new trial. This question, therefore, is not subject to review. In an abundance of caution, however, we have examined the record and find that the defendant's contention is without merit. The trial court conducted a hearing in the absence of the jury, as required by *State v. Seward*, 163 Kan. 136, 181 P. 2d 478, and determined that the confession was freely and voluntarily made. Defendant neither requested, nor was he denied, the right to testify at such hearing; however, he did testify later in the presence of the jury. The necessity of an instruction being given on the voluntariness or involuntariness of a defendant's statement was decided adversely to this contention in *State v. Robinson*, 182 Kan. 505, 322 P. 2d 767.

Defendant next contends the court erred in admitting the testimony of Fitch, McClain, Bowman and Freerksen as rebuttal evidence. The testimony of these four witnesses pertained to a Thunderbird automobile found on September 12, 1958 (the day of the Sutton robbery), and evidence that the defendant's fingerprints were on an aerosol shaving cream can and a rear view mirror found in the automobile.

Rebuttal evidence may be defined as evidence presented in denial of some fact which the adverse party has attempted to prove. (20 Am. Jur., Evidence § 277.) Here Freeman's defense was that of alibi in which he contended he was in Texas at the time of the Sutton robbery, he had never been in Kansas, except across the corner thereof on his way to Kansas City in August 1958, and he was not in Lebo, Kansas, on September 11 or 12, 1958. The evidence of the four rebuttal witnesses clearly refuted Freeman's purported alibi defense and was properly admitted by the trial court.

Defendant next contends that the trial court erred in overruling his motion for new trial. By what has been heretofore said in this opinion, no illegal testimony was admitted over the objection of the defendant. The only remaining ground of the motion was that the verdict was contrary to the law and evidence. Defendant candidly concedes that the state proved the crime was committed but asserts it failed to prove by competent evidence the defendant committed the crime. We have herein decided all of defendant's contentions regarding the admissibility of evidence are without merit; further, the defendant was positively identified as one of the participants in the crime. The evidence, if believed by the jury, amply supported its verdict finding the defendant guilty. When there is substantial competent evidence to support a finding of guilty, a verdict will not be disturbed on the ground it was contrary to the evidence. (*State v. Russell*, 182 Kan. 649, 323 P. 2d 913.) We have also carefully examined the court's instructions which adequately set forth the law applicable to the case. We therefore conclude that the defendant's motion for new trial was properly overruled.

Defendant next contends he was deprived of his constitutional right to a fair trial because of his financial inability to secure the appearance of his alibi witnesses at the trial. In his notice of alibi defendant stated he proposed to offer evidence that at the time of the robbery he was in the vicinity of Wichita Falls, Texas. In addition to himself he listed three witnesses from Wichita Falls who would support his alibi. Defendant testified his alibi witnesses were not present at his trial because he did not have funds to bring them to Topeka. Nowhere in the record does it appear that the defendant either prior to or during trial made any request to the court for an advancement of funds to secure the attendance of witnesses on his behalf; nor does it appear that any attempt was made by him to utilize the provisions of G. S. 1949, 62-1313, whereby a commission may be appointed to examine upon interrogatories any material witness who resides out of the state. Under these circumstances we are unable to say that the defendant made any attempt to secure attendance of his alibi witnesses or to obtain their testimony. Consequently, his contention that he has been deprived of a fair trial because of lack of funds is completely without merit.

Freeman's last contention of substance is to the effect he has been deprived of his constitutional right to a full, fair and complete re-

view of his case on appeal because critical portions of the proceedings in the trial court were not recorded, namely, voir dire examination of the jury and final arguments of counsel.

The state has filed an affidavit signed by the judges of the district court of Shawnee county stating that it has long been the custom and practice in the trial of jury cases in said district for the official court reporter to record voir dire examination of prospective jurors and closing arguments of counsel only when the same are requested by counsel.

In the instant case no request was made by counsel that the voir dire examination or closing arguments be recorded; neither was such a record directed by the judge to be made. Full stenographic notes of all testimony were made, and the defendant was furnished a transcript of the same. This point was not included in the grounds of the defendant's motion for new trial, nor does it appear to have been urged in oral argument on the motion. Strictly speaking, under such circumstances, the matter is not before us for appellate review. We have, however, carefully examined defendant's argument contained in his brief and are unable to discern in what manner he has been prejudiced in the preparation of his appeal by the absence of these portions of the record. We believe that our decision in *State v. Perkins,* 193 Kan. 589, 396 P. 2d 365, is peculiarly applicable to this case, and defendant has failed to make it affirmatively appear his substantial rights were in any way prejudicially affected by the failure of the court reporter to record the voir dire examination and the closing arguments.

Defendant's remaining specifications of error were in the nature of trial errors which were not included in his motion for new trial, nor does it appear that they were presented to the trial court at the hearing on the motion. The rule in this jurisdiction is that in a criminal case specifications of error not included in the grounds of the motion for new trial, and thus brought to the attention of the trial court, cannot be considered on appeal. (*State v. Trams,* 189 Kan. 393, 369 P. 2d 223, and cases therein cited.) Moreover, alleged trial errors not heard nor presented at the hearing on the motion for new trial are unavailing on appeal from a conviction. (*State v. Malone,* 194 Kan. 563, 400 P. 2d 712.) Notwithstanding our rule, we have carefully considered each of the specifications of error and find nothing approaching reversible error.

Defendant has had the benefit of able and competent counsel at the trial and also in the presentation of his appeal. After considering the entire record, we are convinced the defendant had a fair trial and a proper verdict was rendered. The judgment of the trial court is therefore affirmed.

It is so ordered.