No. 55,357

STATE OF KANSAS, *Appellee,* v. RICHARD COY, *Appellant.*

(672 P 2d 599)

Opinion filed December 2, 1983.

*Robert L. Taylor,* of Hutchinson, argued the cause and was on the brief for appellant.

*Michael C. Brown,* special prosecutor, of Brown, Brown & Isern, of Great Bend, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions of rape (K.S.A. 21-3502) and aggravated burglary (K.S.A. 21-3716). The facts in the case were undisputed except for the identity of the defendant, Richard Coy, as the burglar-rapist. On August 4, 1982, Miss B was awakened in the middle of the night when she heard an intruder in her bedroom. She was raped by the intruder. Because of the darkness and lack of illumination, she could not identify defendant as her assailant by visual observation. Defendant lived in an apartment across the street from the victim and was observed shortly after the rape walking on the street in the vicinity of the victim's home. Identification of defendant as the rapist was based on two types of evidence: (1) A voice identification by the victim from a taped conversation between defendant and police officers at the police station, and (2) a piece

of a zipper tooth found at the scene which matched a broken zipper tooth found in blue jeans taken in a search at defendant's house. The testimony as to the matching zipper tooth was not rebutted or explained by the defense testimony. It undoubtedly brought about the conviction in this case. On the appeal, defense counsel raises six points of claimed error.

The defendant first contends that he was unlawfully arrested or seized without probable cause, that he was taken to the police station and questioned at length by police officers about the rape, and that the voice recording of the conversation played to the victim constituted the fruits of an unlawful arrest and seizure and was, therefore, not admissible. The testimony presented at the trial showed clearly that defendant went to the police station voluntarily, driving his own vehicle, and that he consented to have his conversation with the police officers taped. The police officer testified that he stopped defendant for a defective muffler and tail light and that defendant could not produce a driver's license. It appears that the defendant was under suspicion in connection with the rape incident. The police officer testified that he asked defendant to go to the police station to talk with him about the rape incident and that defendant agreed to go. Defendant testified that the policemen stopped him, but he did not know why. He also said that the officer asked him to go to the station and answer some questions and that defendant said, "Sure." He also testified that there was no indication that he was under arrest at that time and that it was only after he was read his *Miranda* warning at the police station that he thought he was under arrest. In view of this testimony, we cannot say that the trial court erred in its denial of defendant's motion to suppress the testimony. We hold that the voice recording did not constitute the fruits of an unlawful arrest and, hence, the voice identification by the victim was admissible into evidence.

Defendant next maintains that the voice identification of defendant by the victim was made under unreliable circumstances and, for that reason, should not have been admitted into evidence. It has long been the rule in Kansas that testimony by a witness as to identification of an accused is admissible into evidence when based upon a voice identification. In *State v. Herbert*, 63 Kan. 516, 66 Pac. 235 (1901), it was held that where a crime was committed in the darkness, a witness who could not

distinguish the features, but did hear the voice of the one who committed the offense, may testify that the defendant was the offender, and that he recognized him by his voice. Other cases which recognize the admissibility of voice identification are *State v. Freeman,* 195 Kan. 561, 408 P.2d 612 (1965), *cert. denied* 384 U.S. 1025 (1966); *State v. Visco,* 183 Kan. 562, 567, 331 P.2d 318 (1958); *State v. Nixon,* 111 Kan. 601, 207 Pac. 854 (1922). The Kansas cases are in accord with the general rule followed throughout the United States as shown by the many cases cited in the annotation in 70 A.L.R.2d 995. Moreover, in considering the question whether one suspected of a crime may be required to demonstrate his voice for identification purposes, the courts have generally held that a suspect or a defendant may not refuse on the grounds that his privilege against self-incrimination would be violated. This rule is followed in *State v. Freeman,* 195 Kan. 561. See also *United States v. Wade,* 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967).

In considering the admissibility of a pretrial identification of a suspect in a criminal case based upon voice identification, it has generally been held that the totality of the circumstances must be analyzed to determine whether the voice identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. In *State v. Ponds,* 227 Kan. 627, 608 P.2d 946 (1980), the court recognized the danger of an impermissibly suggestive pretrial photo-lineup identification and followed the totality of circumstances rule. In *United States v. Pheaster,* 544 F.2d 353, 369 (9th Cir. 1976), the United States Court of Appeals for the Ninth Circuit held that, because the possibility of irreparable misidentification is as great when the identification is from a tape recording as when it is from a photograph or lineup, the same due process protections should apply to either method. Following *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972), the court held that, in determining the constitutional adequacy of pretrial identification procedures in any particular case, the central question is whether, under the totality of circumstances, the identification procedures were reliable even though the confrontation procedure was suggestive.

We hold that the totality of circumstances rule which has been applied in this state to photo-lineup identifications should also

be applied in cases involving pretrial voice identifications. In the case now before us, a voice identification test was reasonably necessary. The victim could not identify her assailant from a visual observation because there was not sufficient illumination of his features. Her description of the assailant was very general and not adequate to establish the identity of the rapist. The record discloses that there were two tapes involved in the voice identification. On one of the tapes, there were three people engaged in conversation—defendant Coy and two police officers. On the other tape, defendant's brother was substituted for the defendant with the others the same. No specific words were requested of the defendant. The victim keyed in on defendant's use of the word "stupid" and his manner of speaking. The surrounding circumstances do not indicate suggestiveness. The victim was awakened at 12:30 a.m. to come to the police station to hear the tapes. She was not told whose voices were on the tapes and if they were suspects. She made a quick and emotional identification which was positive and not indecisive. She heard defendant's voice, both angry and calm, and immediately identified his voice. The trial court, after a hearing on defendant's motion to suppress, held the tapes to be admissible. We cannot say that the trial court committed error. The necessity of the voice identification was clearly established and the procedure used was not unduly suggestive under the totality of the circumstances. We hold that the voice identification by the victim was admissible.

Defendant's next point is that the jury panel was selected in a way contrary to applicable statutes and constitutional mandates designed to afford defendant a fair trial by his peers. The difficulty with the defendant's position is that he has presented no evidence whatsoever that the jury was selected in an improper manner. The original panel of 40 persons was exhausted after 20 qualified jurors had been selected with an additional eight jurors still needed. The trial court ordered the sheriff to round up an additional 13 persons from which the additional eight jurors would be selected. At this time, defendant's counsel moved the court to declare the jury panel unconstitutional because of improper selection.

In selecting additional jurors, the trial judge utilized the provisions of K.S.A. 43-167 which, in substance, provides that in any

case where an insufficient number of jurors appear or if a panel be exhausted by challenge or otherwise before the jury is sworn, the court may order the sheriff to summon a sufficient number of other persons to complete the jury. The court may order such additional members summoned in the same manner as is provided for members of the original jury panel or otherwise. In *State v. McCambry,* 225 Kan. 803, 805, 594 P.2d 222 (1979), it was held that the procedure outlined in 43-167 is a fair and reasonable manner of selection. It is based upon necessity, and is constitutionally permissible when fairly and impartially carried out. Today, the more prevalent practice is for the court to maintain special lists of talesmen to fill emergency shortages. In the present case there is nothing in the record to show that the additional jurors were not summoned in a fair and impartial manner.

Although defense counsel did move to discharge the jury panel, he did not comply with the provisions of K.S.A. 22-3407 which provides:

"22-3407. **Motion to discharge jury panel.** (1) Any objection to the manner in which a jury panel has been selected or drawn shall be raised by a motion to discharge the jury panel. The motion shall be made at least five days prior to the date set for trial if the names and addresses of the panel members and the grounds for objection thereto are known to the parties or can be learned by an inspection of the records of the clerk of the district court at that time; in other cases the motion must be made prior to the time when the jury is sworn to try the case. For good cause shown, the court may entertain the motion at any time thereafter.

"(2) The motion shall be in writing and shall state facts which, if true, show that the jury panel was improperly selected or drawn.

"(3) If the motion states facts which, if true, show that the jury panel has been improperly selected or drawn, it shall be the duty of the court to conduct a hearing. The burden of proof shall be on the movant.

"(4) If the court finds that the jury panel was improperly selected or drawn, the court shall order the jury panel discharged and the selection or drawing of a new panel in the manner provided by law."

In *State v. Holt,* 228 Kan. 16, 19, 612 P.2d 570 (1980), it was held that K.S.A. 22-3407 imposes a duty upon the moving party, who challenges a jury panel, to go beyond a bald claim of discrimination, and to state some *factual basis* for the claim that the jury panel was improperly selected or drawn. This defendant failed to do. The specific facts supporting a claim that a jury panel was improperly drawn must be included in the motion

challenging the venire before a hearing is required. In this case, we also note that defendant, on motion for a new trial, did not suggest to the court any evidence that he had knowledge of to show that defendant was denied a fair trial because the jury was improperly selected. Under the circumstances, we have no hesitancy in holding that counsel's contention that the defendant should have a new trial because the jury panel was improperly selected is without merit.

Defendant's next point is that defendant's bond was excessive and his incarceration by reason thereof, before and during the trial, denied him a fair trial. The original bond set for the defendant by the court was $100,000, which was later reduced to $50,000. Although defendant argues that his confinement deprived him of his right to defend himself, he presented no evidence to this effect. There is no showing whatsoever that the investigation of the case by defense counsel was in any way hampered by the fact that defendant was confined in jail. Defendant made no attempt to test the legality of the bond by filing a writ of habeas corpus. We find no error.

The defendant next maintains that the trial court erred in denying defendant's request for a change of venue. In order to prove prejudice so as to require a change of venue, specific facts and circumstances must be established by evidence which indicate that it will be practically impossible to obtain an impartial jury in the original county to try the case. *State v. Rainey*, 233 Kan. 13, 14, 660 P.2d 544 (1983); *State v. Salem*, 230 Kan. 341, 343, 634 P.2d 1109 (1981).

In the present case, 53 people were available and 30 members of the panel were passed for cause. The record does not show that there was any great difficulty in selecting the jury, nor does the record contain any news articles to show prejudice in the community. The record simply was not sufficient to require the trial court to grant a change of venue in this case.

We, likewise, find no error in the contention that the evidence was not sufficient to sustain the convictions in the case. The evidence of the State is set forth in the beginning of this opinion and, when considered in the light most favorable to the prosecution, is sufficient for a rational factfinder to find the defendant guilty beyond a reasonable doubt. *State v. Coberly*, 233 Kan. 100, 661 P.2d 383 (1983).

As his next point, defendant maintains that the trial court committed reversible error in sentencing the defendant to a term of imprisonment in excess of the statutory penalties and, thereafter, in changing the sentence without affording the defendant an opportunity to be present at the hearing where change of sentence could be considered. In this case, the judgment of sentence was originally entered on January 3, 1983, at which time the trial court imposed a sentence of a minimum of 20 years to a maximum of life on the conviction of rape and a minimum of ten years to a maximum of twenty years on the conviction of aggravated burglary. The minimum terms set by the court were excessive. Rape (K.S.A. 21-3502) is a Class B felony and the statutory minimum sentence is fixed at five to fifteen years. Aggravated burglary (K.S.A. 22-3716) is a Class C felony and the statutory minimum sentence is three to five years. See K.S.A. 1982 Supp. 21-4501. Apparently the court noted that the minimum sentences imposed were excessive, and, on January 5, 1983, without notice to defendant, entered an ex parte order changing the minimum sentence on the rape count to fifteen years and the minimum sentence on the aggravated burglary count to five years, thus bringing each sentence within the statutory limitations.

We find that the trial court committed error in imposing the new sentences without affording defendant an opportunity to be present in person. This court has specifically held that, in a criminal prosecution where an erroneous original sentence of imprisonment has been vacated and set aside, a new sentence imposed in the absence of the defendant is void, for, under such circumstances, it is mandatory that the defendant be present in court at the time of the sentencing. *Roberts v. State,* 197 Kan. 687, 690, 421 P.2d 48 (1966); *Aeby v. State,* 199 Kan. 123, 127, 427 P.2d 453 (1967). In *Aeby,* the court held that the proper procedure to correct a sentence is to return the defendant to court for sentencing. The factual circumstances in the present case are similar to those in *Roberts* and *Aeby.* The sentences pronounced were longer than the statutory limits provided. The trial court had no right to resentence the defendant without affording him a right to be present. On this point the case is reversed and remanded to the district court with directions to

resentence the defendant on the convictions of rape and aggravated burglary.

We have considered other claimed errors set forth in defendant's brief, and we find them to be without merit.

For the reasons set forth above, the convictions of the defendant for rape and aggravated burglary are affirmed. As to imposition of sentences, the case is reversed and remanded to the district court with instructions to resentence defendant, affording defendant an opportunity to be present and to be heard at the time of resentencing.