[No. B076492. Second Dist., Div. Five. June 8, 1994.]

In re GILBERT R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GILBERT R., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with exception of part II.

**COUNSEL**

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendlin Pollack, Assistant Attorney General, Linda C. Johnson and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

### I.

Gilbert R., a minor, appeals from a wardship order resulting from a juvenile court determination he committed an assault with a firearm and a finding a principal in the commission of the offense was armed with a handgun. (Pen. Code, §§ 245, subd. (a)(2), 12022, subd. (d).) In the published portion of this opinion, we hold that the minor's Fourth Amendment search and seizure rights were not violated when he consented to accompany two detectives to a police station for purposes of interrogation.

██ The minor argues that his confession was the product of an unlawful detention. Prior to the adjudication hearing, the minor moved to suppress his confession on search and seizure grounds pursuant to Welfare and Institutions Code section 700.1. The motion was denied. ██ The following is the standard of review we are required to apply on appeal: "Accordingly, we reaffirmed in [*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 (107 Cal.Rptr. 13, 507 P.2d 621)] that for the purpose of finding those facts 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' " (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961]; accord, *People* v. *Clair* (1992) 2 Cal.4th 629, 678 [7 Cal.Rptr.2d 564, 828 P.2d 705].) When that standard of review is applied, the following was the state of the evidence taken in a light most favorable to the order denying the suppression motion.

On April 21, 1992, two Los Angeles Police Department detectives went to the minor's home in Fontana. The minor's mother came to the front door. The detectives asked if she was the minor's mother. She acknowledged she was. The detectives asked if they could enter the house and she said, "[Y]es." She then opened the door so the detectives could enter. The detectives asked if they could speak to the minor. One of the detectives "advised her that we would like to talk to her son at Hollenbeck station regarding an incident that happened in the Hollenbeck area, and asked if she and her son didn't mind we'd like to interview her son at Hollenbeck station." The minor's mother indicated he was expecting to stay the next evening at his grandmother's home. She asked the detectives to take him to his grandmother's home in the "El Sereno area" after the interview. The detective indicated that "if nothing occurs after the interview" both he and his partner would ensure that the minor was taken to the grandmother's home. The minor was asked "if he had any problem coming along." The minor said, "[N]o, that he'd like to pack a suitcase." The minor went to his bedroom and packed a suitcase. The minor accompanied the two detectives in a "standard four-door unmarked police vehicle" on the 90-minute trip from Fontana to the Hollenbeck station in Los Angeles where he confessed after being advised of his constitutional rights. At no time did the minor indicate he wanted to leave. He was interrogated in the office of the station commander. When the minor indicated he was hungry, the detectives went to a nearby fast food establishment and purchased some breakfast. While the detectives went to purchase the food, the minor remained in the commander's office with the door open. There were some homicide investigators in a

nearby room. They were told the minor was sitting in the commander's office. The minor was told that if he had any questions he should "just holler."

■ The foregoing testimony by a detective constituted substantial evidence that the minor consented to go to the police station and that no Fourth Amendment violation occurred. ■ In order for the Fourth Amendment exclusionary rule to come into play in the context of an arrest or a detention, it is necessary that a "seizure" of a person has occurred. Contact between state officers and an individual "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." (*Florida* v. *Bostick* (1991) 501 U.S. 429, 434 [115 L.Ed.2d 389, 398, 111 S.Ct. 2382].) The United States Supreme Court has set forth the following test for determining whether an individual has been "seized" within the meaning of the Fourth Amendment: "The test provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [she or] he was not free to leave.' [Citation.]" (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 572, 108 S.Ct. 1975].) Later, the Supreme Court noted: "The test's objective standard—looking to the reasonable [person's] interpretation of the conduct in question—allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment. [Citation.] This 'reasonable person' standard also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." (*Id.* at p. 574 [100 L.Ed.2d at p. 572].) In a thoroughly motley array of circumstances, appellate courts have held that when a person agrees to accompany the police to a station for interrogation or some other purpose, the Fourth Amendment is not violated. (*U.S.* v. *Ortega-Santana* (1st Cir. 1989) 869 F.2d 12, 14 [". . . the inspectors' invitation to appellant was unaccompanied by any threat or show of force or other form of physical restraint."]; *State* v. *Martin* (Me. 1990) 580 A.2d 678, 681 [". . . the officer asked, not ordered, [the defendant] to accompany him to the . . . police station to make a statement."]; *State* v. *Kramar* (1989) 149 Wis.2d 767 [440 N.W.2d 317, 323] [". . . notwithstanding the fact that the officers never expressly told the defendant that he did not have to accompany them to the police station, we conclude that under the circumstances outlined above, a reasonable person in the position of the defendant would have concluded that such was the case."]; *State* v. *Hunt* (1988) 150 Vt. 438 [555 A.2d 369, 377] [". . . two police officers with a third nearby, in a manner neither threatening nor compelling asked defendant if he would mind going to the police station to answer some questions."]; *State* v. *Coy* (1983) 234 Kan. 414 [672 P.2d 599, 601] [". . . police officer . . . asked defendant to go to the police station to talk with him about the

rape incident and . . . defendant agreed to go."] *State* v. *Thibodeaux* (La. 1982) 414 So.2d 366, 368 ["defendant was approached by two plainclothes police officers at his house . . . [who] . . . advised him of his rights and requested that he accompany them to the police station."]; *Henry* v. *State* (Alaska 1980) 621 P.2d 1, 2 [police officer asked defendant ". . . would he mind coming down []" to the police station in order to be fingerprinted]; *State* v. *Morgan* (1980) 299 N.C. 191 [261 S.E.2d 827, 830] [a detective "identified himself and told defendant that they would like to talk to him at the sheriff's department."]; *People* v. *Wipfler* (1977) 68 Ill.2d 158 [11 Ill.Dec. 262, 368 N.E.2d 870, 871] [defendant's mother informed that a detective "would like to talk to Steven about some burglaries under investigation" and she said "she would tell Steven to go to the police station after school."].)

 In the present case, the minor's mother was asked if her son would accompany two detectives to the Hollenbeck station in Los Angeles. Additionally, the minor was asked if he would accompany the detectives from his home in Fontana. Further, the detectives agreed that if nothing developed as a result of the questioning at the Hollenbeck station, they would take the minor to his grandmother's house. At the station, the minor was apprised of his constitutional rights while eating breakfast with his interrogators in the station commander's office. Under these circumstances, substantial evidence supported the implied finding of the juvenile court that when all of the circumstances are viewed objectively, a reasonable person would have believed that he or she did not have to accompany the detectives to the Hollenbeck station. As a result, the minor's confession was admissible.

II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. DISPOSITION

As modified in the unpublished portion of this opinion, the wardship order is affirmed.

Grignon, J., and Armstrong, J., concurred.

A petition for a rehearing was denied June 21, 1994, and appellant's petition for review by the Supreme Court was denied September 7, 1994.

---

*See footnote, *ante*, page 1121.